The evidence is sufficient to sustain the verdict of the jury.

Appellant's sole contention is that the evidence is insufficient to support the conviction because it rests upon the uncorroborated testimony of the witnesses Alcorta and Rivas who were accomplices as a matter of law.

The testimony shows that Alcorta and Rivas knew nothing about appellant having a rifle until he exhibited it at the time he asked about the boys who had started a difficulty. When his attention was directed to a group of boys he raised the rifle and pointed it toward them. At which time Alcorta told him three times and Rivas once, not to shoot. Alcorta and Rivas admitted that they were asked by the police shortly after the shooting and also several days later about the shooting and they denied knowing anything about who fired the rifle. Rivas admitted that while he was being detained shortly after the shooting that he ran away from the police. It was shown that about one week after the shooting they told the police what they knew about it. Each admitted his interest in the appellant and his desire to see him escape detection, Rivas saying that he did not want to be a stool pigeon as "things happen to them * * *."

The record reveals that the witnesses Alcorta and Rivas made no affirmative statement to the officers which would have exculpated appellant or raised an affirmative defense in his behalf, but shows that upon being questioned by the officers they falsely denied having any knowledge of the killing. The fact that the witnesses falsely denied having any knowledge of the crime would not of itself make such witnesses accomplices. Hence under the evidence said witnesses were not accomplices as a matter of law. Tipton v. State, 126 Tex.Cr.R. 439, 72 S.W.2d 290; Franks v. State, 130 Tex.Cr.R. 577, 95 S.W.2d 128; 2 Branch 2d Ed., p. 32, Sec. 731; 18 Tex.Juris. 255, Sec. 156.

However, the court submitted for the determination of the jury the question of whether said witnesses were accomplices. The jury was instructed that if they found they were accomplices then to acquit appellant unless they further found that the testimony of Alcorta and Rivas was corroborated by other evidence connecting appellant with the offense charged, and also that one accomplice could not corroborate the testimony of another.

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion aproved by the Court.

R. R. BEARD, Appellant,

v.

HENKE & PILLOT, INC., Appellee.

No. 6178.

Court of Civil Appeals of Texas.

Beaumont.

May 8, 1958.

Alto V. Watson, Melvin Combs, Beaumont, for appellant.

Keith, Mehaffey, McNicholas & Weber, Beaumont, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment rendered upon an instructed verdict in the district court of Jefferson County, in a slipping and falling case.

The appellant Beard sued the appellee, Henke & Pillot, Inc., and others, alleging that his wife suffered serious injuries when she slipped and fell on a grape on the floor of appellee's supermarket on Eleventh Street in the City of Beaumont. During the trial, Beard dismissed his case against the other defendants. At the conclusion of the evidence introduced by the appellant, as plaintiff in the trial court, and before any evidence was introduced by appellee, the trial court sustained appellee's motion for instructed verdict. The appellant has perfected his appeal to this court for review of the judgment.

Appellant's sole point of error is that "the trial court erred in granting the motion for instructed verdict, because the evidence clearly raised an issue of fact, and the jury could properly have found, that the grape which caused Mrs. Beard to slip and fall had been on the floor for a sufficient length of time for appellee, its agents, servants and employees, in the exercise of ordinary care, to have discovered and removed same."

The parties on appeal are in agreement as to the law applicable to such a case as this. They agree that in order to recover in this type of case a plaintiff must establish by evidence: (1) that the defendant put the foreign substance on the floor or (2) that the defendant knew the foreign substance was on the floor and willfully or negligently failed to remove it, or (3) that the foreign substance had been upon the floor for such a period of time that it would have been discovered and removed by the defendant had the defendant exercised ordinary care. The appellant in this case admits in his brief that there is no evidence to establish that the appellee placed the grape on the floor, or that it actually knew that it was present and negligently and willfully failed to remove it, but he urges that the evidence establishes or raises a fact issue for the jury to determine, whether the grape which caused Mrs. Beard to slip and fall had been on the floor a sufficient length of time for the appellee, its agents, servants and employees, in the exercise of ordinary care, to have discovered it and

removed it before Mrs. Beard stepped on it and fell.

Mrs. Beard testified in detail in regard to all the events leading up to her fall in the store. Both parties, in their briefs, have summarized this testimony and, we must add, have done so skillfully. We make the following summary of her testimony, taken from the statement of facts and not from the briefs of either party.

Mrs. Beard went to the appellee's store to have lunch and shop for groceries, arriving about 2:45 p. m. She entered the building through the door on the north side, turned to the left and went to the lunch counter which was to the left of her place of entrance. She sat on a stool at the lunch counter which was about 10 or 15 feet from the place where she later slipped and fell. She ordered a hamburger and coffee, then she went over near the door through which she had entered and talked with a friend, who was an employee of appellee. While she was talking to the friend for two or three minutes, while her food was being prepared, she faced the grocery and produce area of the store during the entire time. There she saw a colored porter sweeping at the place where she later fell. After the talk was finished she then went to the lunch counter and ate the hamburger and drank her coffee, paid her bill, went through a turnstile into the grocery and produce department, got her a grocery basket and started shopping. She walked directly to the point where she fell. From the time she was standing by the door talking and watching the porter sweeping until the time she fell about 15 minutes elapsed and no one entered the turnstile during that time. She saw no customers in the vegetable department. While she was still seated at the lunch counter the porter came and swept there, sweeping under her feet. He did not sweep next to the edge of the boards, and left some cigarettes and straws where he had swept. During the time intervening from when she saw the porter sweep the aisle to the time of the fall, she did not see anyone else in that aisle. When a person bought grapes in the store they were put in a sack and the sack fastened with clippers. She left the turnstile entering the aisle and was pushing her basket in front of her before she fell. This basket obscured her view of the floor on which she walked. After she fell she noticed a part of a grape on the floor where she had slipped and fallen. The grape was mashed and still damp and a part of the hull was on her right shoe where her big toe was, the inside sole of her shoe. There was no other foreign substance on the floor that she saw; no customers came up immediately after she fell and there were only store employees there.

On cross examination Mrs. Beard testified that after she had finished talking to her friend she returned to the lunch counter and started to eat her lunch; she was eating it from the counter in front of her in an essentially normal manner. She was asked the question, "While you were eating your hamburger and drinking your coffee that would put your back pretty much to the point where you later fell, would it not?" She answered, "No, not too much. See? I am facing this way." She stated that she is a close observer and sees everything that moves. To the question, "If you were sitting here, say that this was on the corner, this is the counter here that goes around and you were on the corner so you would be in the position where you later fell would be back in that direction, would it not?" She answered, "Yes, kind of." She was not undertaking to tell the jury that she constantly turned around and kept looking at the spot of the fall all of the time, not constantly, but she did see it. The place where she fell was not directly behind her but was back of her left shoulder. While the porter was sweeping under her feet she looked down to watch him sweeping and while she was looking down there the area where she fell was outside her observation; she did not keep either the porter or the area where she fell under any constant observation. She did not see the grape on which she fell until she had al-

ready mashed it, "No way of telling how long that grape had been there, how old it was." She did not undertake to say that nobody passed through the store, but she did say that nobody passed through that turnstile leading to the place where she fell while she was watching it.

 We are unable to agree with the appellant's contention that the above evidence is sufficient to raise a fact issue as to whether the grape on which Mrs. Beard slipped had been on the floor long enough for the appellee's employees to have discovered it and removed it, had they used ordinary care. Mrs. Beard's testimony is not that no one else was in the place of the fall except the porter, but goes no farther than to say that she saw no one else go in through the turnstile near where she was eating, and that she was sure nobody went through the turnstile and did not see anyone else in the place where she fell. So far as the evidence shows, the grape may have been dropped or rolled or placed at the spot of the fall at any time immediately preceding her stepping on it. Her testimony does not exclude the possibility of the presence of other persons at or near the spot of the fall shortly before she stepped on the grape and fell and injured herself, nor the possibility that such person placed the grape there shortly before she fell. It follows then that we find no error in the action of the trial court in granting the motion for instructed verdict.

We think it unnecessary to cite and quote from authorities in this case. The briefs of the parties narrow our consideration down to the one point of contention discussed above, and that is concerned entirely with the sufficiency of the evidence to present an issue of fact. We note, however, the similarity of the fact situation here to that in Smith v. Safeway Stores, Inc., Tex. Civ.App., 167 S.W.2d 1044. The court held there that there was a total absence of any testimony bringing liability of the store owner within either of the conditions laid down in the rules announced. The case of

Safeway Stores, Inc., of Texas v. Miller, Tex.Civ.App., 110 S.W.2d 927, presents facts similar in many ways with those here, with a holding that the evidence was insufficient to raise an issue of liability.

We find no error in the judgment and it is accordingly affirmed.