**Linda KEETCH, Petitioner,**

v.

**The KROGER COMPANY, Respondent.**

No. D–0671.

Supreme Court of Texas.

Dec. 2, 1992.

---

Michael A. Robertson, Grand Prairie, for petitioner.

Brian J. Brandstetter and Scott W. MacLaren, Dallas, for respondent.

ON APPLICATION FOR WRIT OF ERROR TO
THE COURT OF APPEALS FOR THE
FIFTH DISTRICT OF TEXAS

OPINION

COOK, Justice.

The opinion of June 3, 1992, is withdrawn and the motion for rehearing is overruled.

This case presents questions of the appropriate jury submission of a case involving a slip and fall in a Kroger store. For the reasons set out below, we affirm the judgment of the court of appeals.

Linda Keetch was in a Kroger store to buy a loaf of bread. Having selected a loaf of bread, Keetch was walking towards the checkout counter by way of the floral department. Kroger displays and sells plants in its floral department. As part of the process of preparing the plants for sale, many of the plants are lightly sprayed with a product called Green Glo to shine the leaves. On the day Keetch was in the Kroger store, a number of plants had been sprayed on a desk in the floral department. Keetch slipped and fell when she was near the desk. Keetch argues that Green Glo overspray collected on the floor by the desk and created a slick spot.

A witness who heard Keetch fall and saw her on the floor testified that there was a waxy type substance on the floor near the floral desk. However, the Kroger employees working in the floral department on the day of the accident testified that they did not notice any slippery spots on the floor. Additionally, both Kroger employees who are assigned to work in the floral department testified that they had never noticed a slippery spot on the floor after spraying plant leaves. One of the employees had worked in the floral department for six years and the other had worked in the floral department for approximately three years.

Keetch sought to hold Kroger liable under both a premises condition and a negligent activity theory. The trial court submitted the case to the jury on only a premises condition theory. The jury found that there was a slippery spot on the floor which presented an unreasonable risk of harm to Keetch. However, the jury refused to find that Kroger knew or should have known of the slippery spot, so the trial court rendered a take nothing judgment. The court of appeals affirmed the judgment of the trial court. 845 S.W.2d 276. We affirm the judgment of the court of appeals.

Keetch argues the trial court erred: (1) when the court refused to submit Keetch's negligent activity claim; (2) when the court submitted a question asking whether Kroger knew or should have known of the slippery spot on the floor rather than a question asking whether Kroger created the slippery spot; and (3) when the court refused to submit a broad form negligence question.

## I.

■ Keetch argues that the trial judge erred by not submitting her negligent activity theory of liability to the jury.[1] Recovery on a negligent activity theory requires that the person have been injured by

or as a contemporaneous result of the activity itself rather than by a condition created by the activity. *See, e.g., Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex.1985); *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627 (Tex.1976); *Hernandez v. Heldenfels,* 374 S.W.2d 196 (Tex.1964). Keetch's theory is that Kroger exposed its customers to the unreasonable risk of a fall by negligently conducting its plant spraying activity in an area of its store that was open to its customers.

■ A Kroger employee sprayed the plants sometime prior to her 7:00 pm quitting time. Keetch slipped on the floor and fell at approximately 7:30 pm. There was no ongoing activity when Keetch was injured. Keetch may have been injured by a condition created by the spraying but she was not injured by the activity of spraying. At some point, almost every artificial condition can be said to have been created by an activity. We decline to eliminate all distinction between premises conditions and negligent activities. The trial court properly did not submit a negligent activity theory of liability on these facts.

## II.

■ We stated the elements of a premises liability cause of action in *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex. 1983). The elements are:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Corbin,* 648 S.W.2d at 296; *Hernandez v. Kroger Co.,* 711 S.W.2d 3, 4 (Tex.1986). In this case, the trial court submitted a question based on Texas Pattern Jury Charge

---

1. Keetch argued to the court of appeals: "Our courts have long recognized a distinction between injuries caused by a condition of the premises and those caused by an activity. In

the instant case Plaintiff alleged a cause of action under both theories." (citation omitted). In this court, Keetch argued her negligent activity theory under point of error 4.

61.02 that incorporated the *Corbin* elements.[2]

▉ The first element, actual or constructive knowledge of some condition on the premises by the owner or operator, is the key point for this case. Keetch argues that if Kroger created the condition then Kroger is charged with knowledge of the condition as a matter of law. Keetch's argument is incorrect. Keetch's theory is supported by a series of court of appeals opinions.[3] The approach of these courts of appeals is that an owner or occupier has sufficient knowledge of a condition to be liable for the injuries caused by the condition if the plaintiff proves the defendant:

> (1) put the foreign substance on the floor; or (2) knew that it was on the floor and negligently failed to remove it; or (3) that the foreign substance was on the floor so long that it should have been discovered and removed in the exercise of ordinary care.

*Robledo v. Kroger Co.*, 597 S.W.2d 560, 560 (Tex.App.—Eastland 1980, writ ref'd n.r.e.) (numbers added); *see also* cases cited in note 3, *supra*. Keetch relies on the first of the three alternatives. However, none of the court of appeals opinions we have been directed to or have located rely on the first alternative to establish liability. The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge.[4] However, the jury still must find that the owner or occupier knew or should have known of the condition. *Corbin*, 648 S.W.2d at 296. Making the inference as a matter of law is improper unless knowledge is uncontroverted. Kroger denied knowledge of the condition so the inference of knowledge could not be made as a matter of law.

Three of our cases are particularly instructive on the determination when knowledge may be inferred from the creation of a condition. First, in *Corbin*, Corbin was injured when he slipped on a grape that had fallen from a self-service grape display. Safeway admitted that at the time Corbin fell it had actual knowledge of the unusually high risk of harm associated with its grape display. *Corbin*, 648 S.W.2d at 296. The court rejected Safeway's argument that Safeway was held to a lower standard if a customer, rather than a Safeway employee, actually knocked a grape off of the display. The *Corbin* court held that Safeway's knowledge of the unusually high risk of harm associated with the self-serve display satisfied the knowledge requirement. Safeway did not have to know that a particular grape was on the floor at a particular time because it knew that the grapes would be on the floor due to the nature of the display.

Second, in *Coffee v. F.W. Woolworth Co.*, we addressed a premises liability case

---

**2.** The relevant questions submitted by the court were:

Question 1: On the occasion in question, was there a slippery spot in the Floral Department on Kroger's floor that presented an unreasonable risk of harm to Linda Keetch?
If you have answered Question 1 "Yes," and only in that event, then answer Question 2.
Question 2: Did Kroger know, or in the exercise of ordinary care should it have known, that the slippery spot, if any, was on the floor?
If you have answered Question 2 "Yes," and only in that event, then answer Question 3.
Question 3: Was Kroger's failure to remove the slippery spot, if any, negligence?
If you have answered Question 3 "Yes," and only in that event, then answer Question 4.
Question 4: Was that negligence a proximate cause of the occurrence in question?

**3.** *See, e.g., Texas Farm Products Co. v. Stock*, 657 S.W.2d 494, 502 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *Johnson v. Kroger, Inc.*, 623 S.W.2d 479, 480–81 (Tex.App.—Corpus Christi 1981, no writ); *Robledo v. Kroger Co.*, 597 S.W.2d 560, 560 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.); *Foodway, Inc. v. Lopez*, 480 S.W.2d 227, 228 (Tex.Civ.App.—El Paso 1972, no writ); *H.E. Butt Grocery Co. v. Kirkwood*, 384 S.W.2d 790, 791 (Tex.Civ.App.—Corpus Christi 1964, no writ); *Great Atlantic & Pacific Tea Co. v. Giles*, 354 S.W.2d 410, 412 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.); *Sherwood v. Medical & Surgical Group, Inc.*, 334 S.W.2d 520, 521 (Tex.Civ.App.—Waco 1960, writ ref'd); *R.R. Beard v. Henke & Pillot, Inc.*, 314 S.W.2d 844, 845 (Tex.Civ.App.—Beaumont 1958, no writ); *H.E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501, 502 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.).

**4.** *See, e.g., Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539 (Tex.1976); *Seideneck v. Cal Bayreuther Assoc.*, 451 S.W.2d 752 (Tex.1970).

where there was no direct evidence that Woolworth knew of the dangerous condition. 536 S.W.2d 539 (Tex.1976). After the court of appeals affirmed a judgment non obstante verdicto for Woolworth, we reversed both courts, holding that the jury could have inferred knowledge on two grounds. First, knowledge could have been inferred because of the length of time that the condition existed. Second, we held that the jury could reasonably infer that Woolworth had actual knowledge of the dangerous condition because store employees were working on the display stand which caused the injury. The hazard was obvious to the store employees working on the display. The fact that Woolworth created the condition was circumstantial evidence of knowledge. This is very different from establishing knowledge as a matter of law when the store owner or operator creates a condition.

Third, *Seideneck v. Cal Bayreuther Associates*, was a premises liability case where Cal Bayreuther Associates created the condition that caused Seideneck's injury. 451 S.W.2d 752 (Tex.1970). Cal Bayreuther operated a showroom in the Trade Mart in Dallas. Seideneck was in the showroom and tripped on a throw-rug that was under a display table. Cal Bayreuther had placed the rug under the table. However, we held that there was no evidence that Cal Bayreuther knew the rug presented an unreasonable risk of harm. Proof that the premises owner or occupier created a condition which poses an unreasonable risk of harm may constitute circumstantial evidence that the owner or occupier knew of the condition. However, creating the condition does not establish knowledge as a matter of law for purposes of premises liability. The trial court properly submitted the question asking whether Kroger knew or should have known of the condition.

5. *See supra* note 2 for the text of the relevant portion of the jury charge.

6. PJC 66.04 Premises Liability—Plaintiff Is Invitee
   Did the negligence, if any, of those named below proximately cause the [occurrence] [injury] [occurrence or injury] in question?

### III.

The trial court submitted a jury question based on Texas Pattern Jury Charge 61.-02.[5] This question properly sets out the *Corbin* elements for a premises liability case. Keetch argues that the submission is improper because it is not in broad form.

■ Texas Rule of Civil Procedure 277 mandates broad form submission "whenever feasible." Accompanied by appropriate instructions, a general negligence question such as Pattern Jury Charge 66.04[6] is a correct broad form premises liability question. *See Parker v. Highland Park*, 565 S.W.2d 512, 519 (Tex.1978) (abolishing doctrine that the occupier has no duty to warn or protect invitees when dangerous condition is open and obvious; replaced no-duty rule with ordinary negligence principles). In *Corbin*, we held that general negligence principles in a premises liability case are stated in Section 343 of the Restatement Second of Torts (1965). 648 S.W.2d at 295. *Corbin* stated the principles of Section 343 as four elements. Therefore, appropriate instructions in a premises liability case must incorporate the four *Corbin* elements. *Hernandez*, 711 S.W.2d at 4; *Corbin*, 648 S.W.2d at 295–96.

One formulation of a negligence definition incorporating the *Corbin* standard was affirmed by the Eleventh Court of Appeals in *Prudential Insurance Company of America v. Henson*, 753 S.W.2d 415 (Tex. App.—Eastland 1988, no writ). The trial court in *Prudential* submitted the following:

NEGLIGENCE by an owner or occupier of a premises is the failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the occupier

Answer "Yes" or "No" for each of the following:

Don Davis   _____

Paul Payne   _____

3 State Bar of Texas, Texas Pattern Jury Charge 66.04 (1990).

knows about or in the exercise of ordinary care should know about.

An owner or occupier's negligence depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition.

753 S.W.2d at 416. *Prudential* demonstrates the feasibility of submitting premises liability questions in broad form. However, this Court recommends the following instructions accompany Texas Pattern Jury Charge 66.04 in the submission of a premises liability case involving an invitee.

> "Negligence," when used with respect to an owner or occupier of a premises, means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier knows about or in the exercise of ordinary care should know about.

> "Ordinary care," when used with respect to an owner or occupier of a premises, means that degree of care which would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.[7]

■ In this case, we need not decide whether failure to submit in broad form was reversible error because Keetch did not provide the trial judge with any indication that her complaint was with the trial court's failure to submit in broad form. Error in the charge must be preserved by distinctly designating the error and the grounds for the objection. Tex.R.Civ.P. 274; *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987). Keetch first complained of the trial court's failure to submit in broad form in her application for writ of error to this court. Because there was not a timely objection, Keetch did not preserve error, if any, in the failure to submit in broad form.

### IV.

We affirm the judgment of the court of appeals.

HECHT, J., files a concurring opinion joined by PHILLIPS, C.J., and CORNYN, J.

MAUZY, J., files a dissenting opinion joined by DOGGETT and GAMMAGE, JJ.

HECHT, Justice, concurring.

I concur in the Court's opinion and write separately only to respond to the dissent.

The dissent would hold that if a store owner or his employees creates a dangerous condition in the store, he has notice of the condition as a matter of law. This is simply incorrect. A person's awareness of a condition cannot necessarily be inferred from the fact that he created it, and thus proof that he created a condition cannot establish his awareness of it as a matter of law. It often happens that a person who creates a condition knows it at the time, as the authorities the dissent cites reflect. But this is not always so. As in this case, for example, an employee may accidentally spray something on the floor without actually knowing it. And he is not charged with constructive knowledge of the condition when it occurs despite his exercise of ordinary care, so that he neither knew nor in the exercise of ordinary care should have known what had occurred. It is perfectly logical to conclude, as the jury did in this case, that a Kroger employee created the slick spot where Keetch slipped and fell, but that he neither knew nor should have known that he had done so.

The dissent also argues that to submit jury questions in broad form in premises liability cases, an element of liability—in this case, whether the owner had actual or constructive knowledge of the unreasonable risk—must be omitted from the charge. It should hardly need be said that broad form submission does not entail omitting elements of proof from the charge. Broad form involves inclusion of multiple elements within a single question, usually by adding accompanying instructions, when it is feasible to do so. It alters only the form of the charge, not the substance.

---

**7.** *See Corbin,* 648 S.W.2d at 295–96; *Prudential Ins. Co. of America,* 753 S.W.2d at 416; 3 State Bar of Texas, Texas Pattern Jury Charge 65.01, 65.02 (1990). These instructions should be accompanied by a definition of proximate cause such as Texas Pattern Jury Charge 65.03 (1990).

One element which must be proved to establish liability in the circumstances of this case is that the premises owner or occupier knew or reasonably should have known of the dangerous condition before the accident occurred. Keetch was obliged to obtain a jury finding on this issue. The trial court might have submitted the matter to the jury in the manner the Court suggests, by including the element as part of the definition of negligence, instead of submitting a separate question to the jury. But it could not omit the finding altogether, as the dissent contends.

Finally, the dissent charges that the Court holds Keetch specifically, and plaintiffs generally, to a higher standard for preserving error in the charge than it set in *State Dept. of Public Highways v. Payne*, 838 S.W.2d 235 (Tex.1992). The dissent claims "that Keetch objected to the trial court's granulated jury charge". *Ante*, at 272. But the objection the dissent refers to did not so much as hint that the trial court's granulated submission was improper or that the charge should have been in broad form. Keetch did request the same question the Court suggests today, but she requested no accompanying instructions. A party does not object to a failure to submit a jury charge in broad form by requesting questions without the necessary instructions. This case is quite different from *Payne*, where the State specifically requested a question on the one element of proof missing from the charge under the proper theory of liability. Keetch did not complain to the trial court that the charge was not submitted in broad form. Even if she had, I would not hold that the trial court's refusal to submit a broad form charge in this case was reversible error.

*See H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259–60 (Tex.1992).

PHILLIPS, C.J., and CORNYN, J., join in this concurring opinion.

MAUZY, Justice, dissenting on motion for rehearing.

The dissenting opinion of June 3, 1992 is withdrawn, and the following is substituted therefor.

The majority gives some friendly advice to those who create hazardous conditions: Look the other way. Ignorance of the law may be no defense, but hereafter ignorance of what your own employees did will be. In creating this new "ignorance defense," the majority continues its assault on precedent and disapproves what the bench and bar had considered well-accepted Pattern Jury Charges. I dissent.

### I.

The ignorance defense is not only contrary to common sense; it is also a radical departure from settled law. For decades, Texas courts have adhered to the rule that "where a dangerous condition upon a floor is created by the servants and employees, a corporate defendant would have notice thereof as a matter of law and hence proof of knowledge thereof, either actual or constructive, is unnecessary." *Safeway Stores Inc. v. Bozeman*, 394 S.W.2d 532, 537 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). *Compare* 3 TEXAS PATTERN JURY CHARGES § 61.02 (1982) (asking whether possessor knew of hazard) *with id.*, § 61.03 (knowledge not required where possessor created hazard). Today the majority totally abolishes this rule, casually dismissing the vast body of case law supporting it.[1]

---

1. Dozens of Texas courts have held that a plaintiff need not prove a store's knowledge of a foreign substance on the floor if the store itself put the foreign substance on the floor. *See, e.g., Houston Natl. Bank v. Adair*, 146 Tex. 387, 207 S.W.2d 374, 376 (1948); *Heritage Manor, Inc. v. Tidball*, 724 S.W.2d 952, 955 (Tex.App.—San Antonio 1987, no writ); *Texas Farm Products Co. v. Stock*, 657 S.W.2d 494, 502 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *Johnson v. Kroger, Inc.*, 623 S.W.2d 479, 480–81 (Tex.App.—Corpus Christi 1981, no writ); *Furr's, Inc. v. Sigala*, 608 S.W.2d 789, 790 (Tex.Civ.App.—El Paso 1980, no

writ); *H.E.B. Foods, Inc. v. Moore*, 599 S.W.2d 126, 128 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Robledo v. Kroger Co.*, 597 S.W.2d 560, 560 (Tex.Civ.App.—Eastland 1980, writ ref'd); *H.E.B. Grocery Co. v. Hawkins*, 594 S.W.2d 187, 188 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Furr's, Inc. v. Quijano*, 571 S.W.2d 343, 345 (Tex.Civ.App.—El Paso 1978, no writ); *Furr's, Inc. v. Leyva*, 553 S.W.2d 202, 203 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Whitfield v. Furr's, Inc.*, 502 S.W.2d 897, 898 (Tex.Civ.App.—El Paso 1973, no writ); *H.E. Butt Grocery*

The traditional Texas approach is not peculiar to this state. Other jurisdictions have adopted the same approach unequivocally:

> The rule requiring actual or constructive knowledge of the defective condition on the part of the storekeeper in order to hold him liable does not apply where the dangerous condition was created by the storekeeper or by persons for whose conduct he is responsible; in other words, where the condition is traceable to an act of the storekeeper or his employees, it is not necessary to prove that he was aware of the condition in order to hold him liable for injuries resulting therefrom.

62A AM.JUR.2D *Premises Liability* § 574 (1990) (citations omitted); *see also* 81 C.J.S. *Negligence* § 81(11) (1966). Six annotations in the American Law Reports reiterate the same rule,[2] three of them calling it a rule of "fundamental significance," and

noting: "No case falling within the scope of this annotation has so much as intimated disagreement with, or possible qualification of, this principle."[3]

The policy concerns underlying the traditional approach are apparent. Unlike a customer, a store owner or occupier has control over the store and its employees, and is able to adopt policies to protect the public. Thus, a store owner or occupier may legitimately be expected not to create a condition that presents an unreasonable risk of harm. By making the owner/occupier liable for the creation of such hazards, the traditional rule encourages the adoption of safeguards to prevent injury. Conversely, by abolishing the traditional rule, the majority removes the incentive for store owners and occupiers to take precautions to protect the public.

This court reaffirmed its acceptance of the traditional rule in *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (1983). The

*Co. v. Tester,* 498 S.W.2d 683, 685 (Tex.Civ. App.—Corpus Christi 1973, no writ); *H.E.B. Food Stores v. Slaughter,* 484 S.W.2d 794, 796 (Tex.Civ.App.—Corpus Christi 1972, writ dism'd); *Foodway, Inc. v. Lopez,* 480 S.W.2d 227, 228 (Tex.Civ.App.—El Paso 1972, no writ); *H.E. Butt Grocery Co. v. Marroquin,* 466 S.W.2d 837, 838 (Tex.Civ.App.—San Antonio 1971, no writ); *H.E. Butt Grocery Co. v. Rodriguez,* 441 S.W.2d 215 (Tex.Civ.App.—Corpus Christi 1969, no writ); *H.E. Butt Grocery Co. v. Dillingham,* 417 S.W.2d 373 (Tex.Civ.App.—Corpus Christi 1967, no writ); *DuBose v. Parkdale Plaza Co.,* 408 S.W.2d 324, 326 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.); *Safeway Stores Inc. v. Bozeman,* 394 S.W.2d at 537; *H.E. Butt Grocery Co. v. Russell,* 391 S.W.2d 571, 573 (Tex.Civ.App.—Waco 1965, writ ref'd n.r.e.); *H.E. Butt Grocery Co. v. Kirkwood,* 384 S.W.2d 790, 791 (Tex.Civ.App.—Corpus Christi 1964, no writ); *Furr's Super Market, Inc., v. Jernigan,* 380 S.W.2d 193, 194 (Tex.Civ.App.—Amarillo 1964, no writ); *Great Atlantic & Pacific Tea Co. v. Giles,* 354 S.W.2d 410, 412 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.); *Sherwood v. Medical & Surgical Group, Inc.,* 334 S.W.2d 520, 521 (Tex. Civ.App.—Waco 1960, writ ref'd); *O'Neal v. J. Weingarten, Inc.,* 328 S.W.2d 793, 795 (Tex.Civ. App.—Beaumont 1959, writ ref'd n.r.e.); *Del Camino Courts, Inc. v. Curtice,* 323 S.W.2d 355 (Tex.Civ.App.—El Paso 1959, no writ); *Beard v. Henke & Pillot, Inc.,* 314 S.W.2d 844, 845 (Tex. Civ.App.—Beaumont 1958, no writ); *Furr's Inc. v. Martin,* 296 S.W.2d 607, 608 (Tex.Civ.App.—Eastland 1956, no writ); *H.E. Butt Grocery Co. v. Johnson,* 226 S.W.2d 501, 502 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.); *F.W. Wool-*

*worth Co. v. Goldston,* 155 S.W.2d 830, 832 (Tex.Civ.App.—Amarillo 1941, writ ref'd w.o.m.); *Montford v. West Texas Hotel Co.,* 117 S.W.2d 811, 812 (Tex.Civ.App.—El Paso 1938, writ ref'd).

**2.** *See* Donald M. Zupanec, Annotation, *Store or Business Premises Slip-and-Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Interior Condition Allegedly Causing Plaintiff's Fall,* 85 A.L.R.3d 1000, § 2(a) (1978); R.D. Hursh, Annotation, *Liability of Proprietor of Store, Office, or Similar Business Premises for Fall on Floor Made Slippery by Washing or Cleaning,* 63 A.L.R.2d 694, § 5 (1959); R.D. Hursh, Annotation, *Liability of Proprietor of Store, Office, or Similar Business Premises for Injury from Fall on Floor Made Slippery by Tracked-in or Spilled Water, Oil, Mud, Snow and the Like,* 62 A.L.R.2d 6, § 7(a) (1958); R.D. Hursh, Annotation, *Liability of Proprietor of Store, Office, or Similar Business Premises for Injury from Fall on Steps Made Slippery by Tracked-in or Spilled Water, Oil, Mud, Snow and the Like,* 62 A.L.R.2d 131, § 7(a) (1958); R.D. Hursh, Annotation, *Liability of Proprietor of Store, Office, or Similar Business Premises for Injury from Fall Due to Presence of Litter or Debris on Floor,* 61 A.L.R.2d 6, § 7(a) (1958); R.D. Hursh, Annotation, *Liability of Proprietor of Store, Office, or Similar Business Premises for Injury from Fall Due to Presence of Obstacle Placed or Dropped on Floor,* 61 A.L.R.2d 110, § 7(a) (1958).

**3.** 62 A.L.R.2d at 31; 61 A.L.R.2d at 24 and 124.

plaintiff in *Corbin* complained that the store's method of displaying grapes resulted in an unreasonable risk of customers falling .on grapes that had fallen to the floor. We unanimously reversed a summary judgment for the store and remanded the cause for trial on this claim, expressly rejecting the approach the court adopts today:

> Safeway believes the only duty it owes its customers with respect to the prevention of these kinds of falls is to pick up whatever objects it finds or should find on the floors of the store. We do not agree.

648 S.W.2d at 296. If the dangerous condition had been created by the store, we explained, the notice requirement would be satisfied:

> Because the placing of [a walk-off] mat in front of the grape display was a function of general store maintenance, the jury reasonably could have inferred that Safeway, through its employees, had failed to put the mat in place. *This inference would satisfy the requirement of notice to Safeway.*

*Id.* (emphasis added).

To support its repudiation of this approach, the majority misrepresents and misapplies two earlier decisions from this court: *Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539 (Tex.1976), and *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.1970). In *Coffee*, we held that there was legally-sufficient evidence to support jury findings in favor of a customer who tripped and fell over a low, empty platform in the defendant's store. The jury found both (1) that the defendant had created the dangerous condition, and (2) that the defendant knew or should have known of the dangerous condition. 536 S.W.2d at 540. If there had been no evidence to support the second finding, we would have had to decide whether the first finding was sufficient to support a judgment for the plaintiff, and the outcome of *Coffee* would have controlled this case.

We decided, however, that the evidence supported both findings; so the proposition for which the majority relies on *Coffee* was not before the court.

The language of *Coffee*, however, provides strong support for Keetch's position in this case. The personnel supervisor in *Coffee* had testified that there were two possible explanations as to why the platform was empty: either the store personnel were changing a display or customers had bought all of the merchandise on the platform. Our discussion on the latter possibility is instructive. Proof of actual or constructive notice of a dangerous condition is necessary, we held, "where an obstacle or slippery substance is on a floor because of the acts of some person, *for whom the proprietor is not responsible.*" 536 S.W.2d at 539 (emphasis added). The reason for this requirement is that "it is unjust to hold the proprietor liable for the carelessness of *some person over whom he has no control,* unless he had a reasonable opportunity to discover the dangerous condition." *Id.* (emphasis added). The converse is clear: where the dangerous condition is created by the carelessness of a person over whom the proprietor does have control, the proprietor may be held liable regardless of his actual or constructive knowledge.

The majority's reliance on *Seideneck* is as misguided as its reliance on *Coffee*. In *Seideneck*, we determined that there was no evidence that the condition and location of a rug created an unreasonable risk of harm. 451 S.W.2d at 754.[4] In the present case, Kroger does not dispute the jury's finding that a slippery spot on the floor created an unreasonable risk of harm. Thus, *Seideneck* is simply inapplicable. The litigants apparently understand this better than the majority does; neither the parties nor the amici curiae have even mentioned *Seideneck* in the briefs and argument before the court.

---

**4.** *See* Comment to Pattern Jury Charge 66.04 (1990) (citing *Seideneck* only for the proposition that "[s]ome conditions have been held, as a matter of law, not to create unreasonable risks").

## II.

I agree that premises liability cases should be submitted in broad form, as suggested by Pattern Jury Charge 66.04. I strongly disagree, however, with the court's rejection of the standard instructions that were meant to accompany that charge. The Comment to Pattern Jury Charge 66.04 explains that it was "designed to be accompanied with the appropriate definitions of 'negligence,' 'ordinary care,' and 'proximate cause' in PJC 65.01–.03." The majority approves the standard definition of "proximate cause" in Pattern Jury Charge 65.03; but it abruptly rejects the definitions of "negligence" and "ordinary care" set out in Pattern Jury Charge 65.01, which states:

> "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.[5]

A comparison of these definitions with those adopted by the majority, Op. at 267, reveals two significant differences. The majority has engrafted onto the standard definition of negligence a new requirement that the owner or occupier have actual or constructive knowledge of the unreasonable risk. Additionally, the majority totally omits the final phrase of the pattern jury charge's definition of negligence: namely, the part holding an owner or occupier responsible for "doing that which a person of ordinary prudence would not have done under the same or similar circumstances." The majority thus creates two overlapping exemptions from liability: one for defendants who are ignorant of conditions they created, and one for defendants who actively do imprudent things. Only by crafting

these new exemptions is the majority able to uphold the trial court's judgment in favor of Kroger.

Before today's opinion, this court had emphasized that premises liability cases were to be governed by the traditional definitions of "negligence" and "ordinary care." *See Corbin*, 648 S.W.2d at 295 ("an invitee's suit against a store owner is a simple negligence action"); *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 519 (Tex.1978) (premises cases are more easily tried under ordinary negligence principles). These definitions, which limited an owner's duty to keep the premises safe, determined liability based either on a premise defect or on a dangerous activity. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985).

The majority's *ad hoc* modification of the simple negligence charge sets the court on a dangerous path. The fundamental purpose of broad-form submission is "to simplify the jury's chore." *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). That aim is thwarted when the court continually tinkers with a charge, adding layer upon layer of new law to benefit litigants it favors. Chief Justice Pope, writing for a unanimous court, warned of this very danger:

> This court's approval and adoption of the broad issue submission was not a signal to devise new or different instructions and definitions. We have learned from history that the growth and proliferation of both instructions and issues come one sentence at a time. For every thrust by the plaintiff for an instruction or an issue, there comes a parry by the defendant. Once begun, the instructive aids and balancing issues multiply. Judicial history teaches that broad issues and accepted definitions suffice and that a workable jury system demands strict adherence to simplicity in jury charges.

*Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984). Regrettably, with today's opin-

---

**5.** Pattern Jury Charge 65.02 sets out corresponding definitions describing a child's requisite de-

gree of care.

ion, the danger against which Chief Justice Pope warned has come to pass.

### III.

Though it determines that this case could have been submitted in broad form, the majority declines to consider whether the trial court's failure to do so was reversible error. According to the majority, Keetch waived any error on this point because she "did not provide the trial judge with any indication that her complaint was with the trial court's failure to submit in broad form." Op. at 267. The majority fails to mention that Keetch objected to the trial court's granulated jury charge, and in conjunction with her objection presented the trial court with a broad-form negligence question which matched, *verbatim*, the broad-form negligence question the majority approves today.[6]

The majority's strict approach to preservation of error contrasts sharply with the approach it took less than three months ago when a defendant argued that it had preserved error in the jury charge. In *State Department of Highways v. Payne*, 838 S.W.2d 235 (Tex.1992), the majority recognized the difficulty of deciding whether to object or request "under the pressure of the courtroom," and acknowledged that the procedure "has been further complicated by our adoption of broad form submission." 838 S.W.2d at 240. The majority's discussion ended with the adoption of a general test:

> There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.

838 S.W.2d at 241. Applying this test, the court held that the State had preserved error in the charge by making an objection that was technically incorrect and by requesting an instruction that misplaced the burden of proof. *Id.*

By almost any measure, Keetch did a better job of preserving error in the charge than the State did in *Payne*. Keetch's objection was at least as clear as the State's objection, which wrongly argued that the characterization of a culvert should have been a jury issue. Unlike the State, Keetch expressly mentioned the appropriate question in her objection, ensuring that the trial court understood what she was complaining about. Additionally, the question Keetch requested was perfectly correct, while the State's objection misplaced the burden of proof.[7]

---

6. Keetch objected as follows:

> Plaintiff objects to question No. 3 for the reason that the question inquires about whether Krogers was negligent in failing to remove the slick spot and thereby fails to submit the negligent activity of Krogers in conducting its spraying operation in its floral department in the area where customers could be expected to walk, and deprives plaintiff of the theory of Kroger's active negligence and plaintiff requests that the court submit, and in connection with this objection, plaintiff has filed a requested issue in substantially correct form which is Question No. 3 on plaintiff's requested issues inquiring about whether the negligence of Kroger was the proximate cause of the occurrence in question without any condition and without any limitation to failure to remove the slippery spot.

This objection complains that question 3 is too narrow; that the question should be submitted as Keetch suggested in her Question 3, which read:

> Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:
A. The Kroger Company
ANSWER: ———
B. Linda Keetch
ANSWER: ———

This question is exactly the same, word-forword, as the broad-form question approved in the majority opinion. At 266, n. 6.

7. The concurring opinion insists that Keetch's objection "did not so much as hint that the trial court's granulated submission was improper or that the charge should have been in broad form." At 268. As indicated in note 6, *supra*, Keetch did object on the ground that the case should have been submitted as Keetch suggested in her Question 3, which was a proper broadform question.

Keetch's objection did not expressly state that her requested question was proper because it was a "broad-form" question. A similar criticism, however, could have been directed at the State's objection in *Payne:* the State's objection did not so much as hint that the charge was improper because it omitted the element of

The majority cites only one case in support of its holding that error was waived: *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987). At 267. Notably, this is the main case relied upon in the dissenting opinion in *Payne.* 838 S.W.2d at 243. Apparently, defendants alone are to enjoy the benefit of the liberal *Payne* standard for preservation of error; plaintiffs are still governed by the strict *Wilgus v. Bond* standard.

Today the court only extends a dual standard of justice—an easy requirement for defendants, an inexplicably strict one for plaintiffs. This approach to justice is similar to that recently announced for the provision of mandamus relief in *Walker v. Packer,* 827 S.W.2d 833 (Tex.1992). Mandamus is readily available to deny discovery, but seldom accessible for those seeking discovery. *See id.* at 846 (Doggett, J., dissenting).

I would hold that Keetch was entitled to submission of the charge she requested, and that she adequately preserved the trial court's error for review. Thus, I would reverse the judgment of the court of appeals and remand this cause for a new trial.

DOGGETT and GAMMAGE, JJ., join in this dissenting opinion.

---

Payne's knowledge. In fact, I made that very argument in my dissenting opinion, 838 S.W.2d at 241; but the majority ignored that criticism, and held that the State had preserved error by making an incorrect objection. At 267.