OPINION




No. 04-02-00708-CV



PRICE CONSTRUCTION, INC.,


Appellant



v.



MINERVA CASTILLO, INDIVIDUALLY, AND AS NEXT FRIEND OF STEPHANIE
CASTILLO AND DAISY JOVITA CASTILLO, MINORS, AND AS REPRESENTATIVE
OF THE ESTATE OF ROBERTA CASTILLO, DECEASED, FELIX CASTILLO AND
HERMELINDA CASTILLO,

Appellees



From the 293rd Judicial District Court, Maverick County, Texas


Trial Court No. 2001-03-17158-CV


Honorable Cynthia Muniz, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Sarah B. Duncan, Justice 

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: February 18, 2004


REVERSED AND RENDERED IN PART, AFFIRMED IN PART

 In eleven issues, Price Construction, Inc. ("Price") appeals from a judgment in favor of
plaintiffs, Minerva Castillo, individually, and as next friend of Stephanie Castillo and Daisy Jovita
Castillo, minors, and as representative of the estate of Roberto Castillo, Felix Castillo, and
Hermelinda Castillo (collectively, the "plaintiffs"). We reverse and render judgment that the plaintiffs
take nothing.

Background

 The Texas Department of Transportation ("TxDOT") contracted with Price to perform road
improvements on a 2.25-mile section of Highway 277 in Eagle Pass, Texas. Price was responsible
for maintaining traffic control devices in the construction area. On August 20, 2000, at
approximately 10:15 p.m., Roberto Castillo ("Castillo") was driving north on Highway 277, while
Carol Sunderland ("Sunderland") was driving south. Their vehicles collided head-on. As a result,
Castillo died on impact. Sunderland received a severe head injury and has no memory of the accident.


 Following Castillo's death, the plaintiffs sued Price, Sunderland, Flasher Ltd.("Flasher"), and
Banner Sign & Barricade, Inc. ("Banner Sign & Barricade"). Before the plaintiffs rested their case
at trial, the court granted Flasher's motion for directed verdict on all of the plaintiffs' claims. As to
their claim against Sunderland, the plaintiffs settled with her prior to the conclusion of trial.
Furthermore, the plaintiffs' claim against Banner Sign & Barricade as subcontractor for Price was
severed and separately appealed. (1) The trial ended with a verdict in favor of the plaintiffs, although
the jury apportioned twenty percent of the liability to Castillo with the remaining eighty percent
attributed to Price. The jury awarded $6,000 to Minerva on behalf of Roberto Castillo and $1.2
million to her in past and future damages; $1 million each to Stephanie and Daisy in past and future
damages; $150,000 to Felix in past and future damages; and $150,000 in past and future damages to
Hermelinda. Price appeals the judgment.

Standard Of Review In its first two issues, Price asserts that the evidence is legally and factually insufficient to
support the jury's findings that Price had actual knowledge of an unreasonably dangerous condition
that proximately caused Castillo's accident. Because we conclude the evidence is legally insufficient
on the element of Price's actual knowledge, we do not reach the issue of factual sufficiency. 

 "A no evidence point will be sustained when (a) there is a complete absence of evidence of
a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than
a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." Merrell
Dow Pharmaceutical, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of
evidence exists when the evidence supporting the finding, as a whole, rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions. Id.

 Premise Liability Claim As A Licensee

 Price maintains that the plaintiffs did not meet their burden of proof in establishing Price's
liability because there is legally insufficient evidence that Price had actual knowledge of an
unreasonably dangerous condition that proximately caused Castillo's death. The proof of a premises
liability claim is dependent on the status of the plaintiff who enters the land. Motel 6 G.P., Inc. v.
Lopez, 929 S.W.2d 1, 3 (Tex. 1996) (per curiam). The trial court submitted this case to the jury
under the legal theory that Castillo was a licensee. Neither party on appeal challenges the submission
of the case on the licensee theory or the definition of a licensee in the jury charge. Accordingly, this
case was submitted under the theory that Price had a duty not to injure Castillo by willful, wanton,
or grossly negligent conduct and to use ordinary care either to warn Castillo of, or to make
reasonably safe, a dangerous condition of which Price was aware and Castillo was not. State Dep't
of Highways & Public Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). It was undisputed that
Price did not injure Castillo by willful, wanton, or grossly negligent conduct. Therefore, in order to
prevail, the plaintiffs were required to establish: (1) the condition of the premises posed an
unreasonable risk of harm to Castillo; (2) Price had actual knowledge of the defective condition; (3)
Castillo had no knowledge of the defective condition; (4) Price failed to exercise ordinary care to
protect Castillo from danger; and (5) such failure was a proximate cause of injury to Castillo. Id.

1. Unreasonable Risk of Harm

 The plaintiffs assert that the construction site posed an unreasonable risk of harm to Castillo.
At trial, the plaintiffs offered a variety of TxDOT inspection reports and photographs along with the
testimony of inspector Raul Flores revealing Price had been cited for various deficiencies at different
times and sections of the construction zone prior to the accident. The plaintiffs also called numerous
witnesses, including Melva DeHoyos ("DeHoyos"), David Steitle ("Steitle"), John Mounce
("Mounce"), and Police Chief Juan Castaneda ("Chief Castaneda"). 

 DeHoyos testified she was driving north on Highway 277 at approximately thirty to thirty-five
miles per hour immediately prior to the accident. Highway 277 consisted of three lanes at the time,
one lane going south and two lanes going north. There had been at least three lane changes over the
course of construction on Highway 277 and DeHoyos had, on several occasions, become confused.
She was also confused on the night of the accident because she could not see clear markings in the
road showing her lane. DeHoyos further testified that on the night of the accident she observed
Castillo driving one to two car lengths behind her with his headlights on and never saw him change
lanes, swerve, drive erratically, or lose control of his vehicle. Castillo did not try to pass her, speed
up, tailgate, or flash his lights at her. As DeHoyos approached the intersection of Church Street, she
moved into the right hand northbound lane about a block before the intersection. As she approached
the intersection, she slowed down because the road curved and the traffic light was red. Castillo did
not pass her, but came even with her driver's side passenger door. When the light turned green,
DeHoyos accelerated. As she did so, she saw a pickup truck approaching her from the opposite
direction, driving south in the "middle" lane, or the lefthand northbound lane. She remembers
moving slightly to the right to avoid the oncoming truck. Seconds later, DeHoyos heard a bang next
to her. She pulled her car over and saw that Castillo's and Sunderland's trucks had collided in the
"middle" lane. 

 Steitle, a traffic engineer, was called as the plaintiffs' accident reconstructionist. He testified
that he reviewed the testimony of various witnesses, photographs, responses to discovery, the
accident report, and the accident site itself. Based on this information, it was his opinion that Castillo
was traveling northbound and Sunderland was traveling southbound immediately prior to the
accident. They collided head-on at a location within Castillo's northbound lane of traffic. Sunderland
would have been negotiating a curve in her travel path up to the point of impact. There was no
evidence of evasive maneuvers on the part of either driver. Steitle further testified that photographs
taken at the scene of the accident showed that almost all of the reflective plastic pavement markers
dividing the lanes of travel, especially the center line divider, were missing. 

 Mounce, a civil engineer specializing in transportation, also testified as the plaintiffs' expert.
He opined that based on the information he had reviewed, the accident was a head-on collision that
occurred in Castillo's lane of travel, and was caused by Sunderland ending up in the wrong traffic
lane because she was confused by the traffic control devices. He noted that a contractor such as Price
is required to effect a traffic control plan for a construction project. The intent of the traffic control
plan is to afford the motorist positive guidance through the construction zone. It is important,
especially at night, to use reflective devices or other types of external lighting to guide a driver safely
through the construction zone. Mounce criticized Price for failing to adequately maintain positive
guidance leading up to the area where this accident occurred. Specifically, he testified that in the
southbound approach to the intersection, the center line, which was defined with raised pavement
markers, had many of those markers missing. This would have diminished a driver's ability to define
the center line. Additionally, because one of the original two southbound lanes had temporarily been
closed, the contractor was required to define the new southbound edge of the roadway by paint or
buttons. Photos taken the day after the accident, however, did not show a visible southbound edge
line, possibly because the paint or buttons were covered by dirt or gravel. The need for an edge line
is especially important to a driver who cannot see the center line because of missing buttons or
because the headlights from oncoming cars inhibit the driver's visibility. In such a case, the driver
would need guidance from the edge of the roadway through the construction zone. When the edge
line is missing or covered by dirt, it creates an unsafe situation. Furthermore, the old center line
marking was still visible because of the reflective paint, although it should have been obliterated when
one of the two southbound lanes was temporarily closed. Mounce stated this additional hazard also
had the potential to mislead or confuse a driver traveling in the southbound lane.

 Chief Castaneda testified he was familiar with the accident site and drove through the
intersection on a daily basis before the accident. In his opinion, driving at night through the
construction site was dangerous because of the lack of visibility. He also considered driving through
the construction site during the day to be a problem because of the heavy traffic on Highway 277. On
more than one occasion, he instructed one of his officers to tell "whoever was in charge there" to
clean the barricades and drums because they were difficult to see at night due to the accumulation
of dirt. Chief Castaneda also testified that there had been a pre-construction meeting between
TxDOT and "several people" where they discussed the start date for the project, problems that might
arise, and when the work would be completed. At that meeting, he expressed a general concern
about the lack of police officers directing traffic at the construction site. 

 Because of our disposition on the second element of the plaintiffs' claim, we need not decide
whether the evidence is legally sufficient to prove that, at the time of the accident, an unreasonable
dangerous condition existed in the southbound approach to the intersection where the accident
occurred. 

2. Actual Knowledge of the Dangerous Condition

 To meet the second element of their premises defect claim, the plaintiffs were required to
prove that Price had actual knowledge of an unreasonable dangerous condition at the accident site.
As noted, Mounce testified the lack of reflective buttons clearly delineating the center lane, combined
with the presence of the old center line reflective paint markings and the lack of a well-defined road
edge, contributed to create an unreasonable risk of harm at night for a southbound driver attempting
to stay in her own lane of traffic through the construction zone. Assuming without deciding that an
unreasonable dangerous condition existed, we must determine next whether the evidence is legally
sufficient to prove Price had actual knowledge of the dangerous condition. 

 Actual knowledge is what a person actually knows as distinguished from constructive or
imputed knowledge; that is, what a person does not actually know, but should know or have reason
to know. State v. Tennison, 509 S.W.2d 560, 562 (Tex.1974)(duty to warn licensee of dangerous
condition arises only when licensor has actual, not constructive, knowledge of the condition); Keetch
v. Kroger Co., 845 S.W.2d 262, 265 (Tex.1992) (proof that a person created the condition does not
establish his awareness of it as a matter of law). 

 The plaintiffs introduced into evidence a series of TxDOT inspection reports from the fall of
1999 to August 15, 2000 which detailed specific deficiencies for the entire 2.25-mile construction
project. In multiple reports, Price was cited for dirty barricades, vertical panels, and plastic drums;
missing warning lights at the end of the construction zone, as well as a missing barricade; lights and
flashers that did not work; and barrels and drums that were knocked down. None of the inspection
reports dealt specifically with the southbound curve criticized by both Steitle and Mounce or the
intersection where this accident occurred. None of the inspection reports noted missing buttons in
the center lane of traffic, the presence of the old center line reflective paint markings, or poorly
maintained edge markings because of accumulated dirt and gravel. In sum, the numerous inspection
reports do not show that Price had actual knowledge of the dangerous condition cited by the
plaintiffs' experts as causing this collision. Moreover, there was no evidence Price failed to correct
deficiencies that had been cited by TxDOT in the inspection reports. It is noteworthy that the day
after the accident, TxDOT again inspected the entire construction zone and found all required traffic
control devices present, and the closure of the one southbound lane to be in accordance with their
plans. Neither the jury nor this court can make a determination from the inspection reports that Price
had actual knowledge of the three deficiencies cited by the plaintiffs' experts as causing this accident,
either individually or collectively.

 Additionally, no one testified that Price had been told about the claimed dangerous conditions
in the southbound lane of traffic near the intersection where Castillo and Sunderland collided. There
was no evidence of previous collisions at or near this intersection. Steitle and Mounce, the plaintiffs'
two experts, testified the construction site posed an unreasonable risk of harm to Castillo and
Sunderland. They did not, and could not, testify that Price knew of the problems and an unreasonable
risk of harm. While Chief Castaneda testified he had a pre-construction meeting concerning the
general safety of the site, there was absolutely no evidence that Chief Castaneda's concerns were
brought to Price's attention or that his concerns dealt with the specific intersection at issue in this
case. In addition, while Chief Castaneda testified that he instructed one of his officers to tell
"whoever was in charge there" to clean the barrels, there is no evidence that person ever spoke to a
Price representative before the accident. The plaintiffs' experts and other witnesses did not testify
that dirty barrels caused this accident. Even when viewed in the light most favorable to the plaintiffs,
the evidence is legally insufficient to support the jury's finding of actual knowledge by Price.

Conclusion

 Because the evidence is legally insufficient to support the jury's finding of Price's actual
knowledge of an unreasonably dangerous condition, we reverse and render judgment that the
plaintiffs take nothing on their claim against Price. Therefore, we do not address Price's remaining
issues on appeal because they are not necessary to the final disposition of this appeal. See Tex. R.
App. P. 47.1. Additionally, we affirm the portion of the judgment ordering that the plaintiffs take
nothing on their claims against Flasher. 


 Phylis J. Speedlin, Justice
1. See Banner Sign & Barricade, Inc. v. Price Constr. Inc., 94 S.W.3d 692 (Tex. App.
-- San Antonio 2002,
pet. denied).