NUMBER 13-98-518-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


WAL-MART STORES, INC.
, Appellant,


v.



LYDIA CORTEZ ORTIZ
, Appellee.

___________________________________________________________________


On appeal from the 107th District Court


of Cameron County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Rodriguez



 Wal-Mart Stores, Inc. appeals from a judgment in which a jury
awarded Lydia Cortez Ortiz $54,250 in damages for a slip and fall
accident in a Wal-Mart Store located in Harlingen, Texas. By three
issues, Wal-Mart challenges the legal and factual sufficiency of the
evidence. We affirm. 

 On June 4, 1993, Ortiz, her adult daughter Yolanda Garza, and
two of her grandchildren visited a Wal-Mart store. While shopping,
Ortiz passed a display where Mimi Rodriguez, a Wal-Mart employee,
was handing out bite-size samples of bean and cheese burritos. Ortiz
passed by the stand without sampling any burritos. Shortly thereafter,
Ortiz slipped and fell onto the floor. Garza came to her mother's aid and
noticed a burrito on her mother's shoe. Garza touched the burrito and
it felt cold. 

 Garza took her mother to the emergency room. Ortiz testified that
her whole body, including her left leg, was hurting. The report from the
emergency room indicated Ortiz complained of head and back pain. 
Two months after the incident, Ortiz had orthoscopic surgery on her
knee; one year later, she had a total knee replacement. 

 Ortiz filed suit against Wal-Mart, alleging a premises liability
negligence cause of action. A jury found Wal-Mart negligent and
awarded Ortiz: (1) $10,000.00 for past physical pain and mental
anguish; (2) $3,750.00 for future physical pain and mental anguish; (3)
$5,000.00 for future impairment; and (4) $25,000.00 for past medical
expenses. The trial court signed a final judgment conforming to the
jury's verdict, and allowed for pre-judgment interest. 

 In its first issue, Wal-Mart contends there is legally and factually
insufficient evidence that it possessed actual or constructive knowledge
of an unreasonably dangerous condition. When we review a legal
sufficiency challenge, we consider all the evidence in the record in a
light most favorable to the party in whose favor the verdict has been
rendered and indulge every reasonable inference in that party's favor. 
See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,
960 S.W.2d 41, 48 (Tex.1998); In re Cummings, 2000 WL 210235 *3
(Tex. App.--Corpus Christi 2000, no pet.). We view the evidence in a
light most favorable to the findings and we disregard all inferences to
the contrary. See id. (citing Sherman v. First Nat'l Bank, 760 S.W.2d
240, 242 (Tex. 1988)). There is legally sufficient evidence so long as
there is more than a scintilla of evidence supporting the finding. See id. 


 In conducting a factual sufficiency review, we examine all of the
evidence regardless of its effect on the reviewed finding. See Lofton v.
Texas Brine Corp, 720 S.W.2d 804, 805 (Tex. 1986). There is factually
insufficient evidence only if the finding is "so contrary to the
overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust." Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 To recover damages in a premises liability case, the plaintiff must
prove: (1) actual or constructive knowledge of some condition on the
premises by the owner/operator; (2) that the condition posed an
unreasonable risk of harm; (3) that the owner/operator did not exercise
reasonable care to reduce or eliminate the risk; and (4) that the
owner/operator's failure to use such care proximately caused the
plaintiff's injuries. Keetch v. Kroger, 845 S.W.2d 262, 264 (Tex. 1992);
Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983). 
Actual or constructive knowledge can be shown when the substance
causing the fall was on the floor for a sufficient length of time that, in
the exercise of ordinary care, it should have been discovered and
removed. See Keetch, 845 S.W.2d at 264.

 In the present case, no Wal-Mart employee had actual knowledge
that the burrito was on the floor prior to Ortiz falling. We must
determine, therefore, whether there was evidence supporting the
finding that Wal-Mart had constructive knowledge of the burrito. 
Rodriguez testified that the burritos were heated. She also testified
there was a microwave on the burrito stand. Garza testified that after
her mother fell, she saw the burrito on her shoe and it felt cold to the
touch. From this evidence, Ortiz contends the burrito was heated,
handed out to a customer, and discarded onto the floor, where it
eventually cooled. Because the burrito had time to cool, Ortiz asserts
Wal-Mart should have known it was on the floor. 

 Wal-Mart, on the other hand, contends that just because the
burrito was cold, does not mean it had been on the floor for a long time. 
As Wal-Mart notes, the burrito could have cooled down on the display
table after it was cut into tiny pieces. Although Rodriguez testified that
the burritos were heated, and that she was busy handing them out,
there is no direct evidence that the burrito in question left the
demonstration table heated and then cooled on the floor. We consider
only the evidence and inferences supporting a finding in a legal
sufficiency review. See Continental Coffee Prods. Co. v. Cazarez, 937
S.W.2d 444, 450 (Tex. 1996). However, "meager circumstantial
evidence from which equally plausible but opposite inferences may be
drawn is speculative and thus legally insufficient to support a finding." 
Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). 


 Here, the only evidence supporting Ortiz's argument that Wal-Mart
had constructive knowledge is that the burrito was cold when Ortiz
slipped on it and that the burritos were heated at some point. This
evidence no more supports the inference that the burrito cooled on the
floor than it supports the opposite inference that it cooled on the display
table. We hold that this evidence is no evidence that the burrito had
been on the floor long enough to charge Wal-Mart with constructive
notice of the condition. See Gonzalez, 968 S.W.2d at 938; Litton Indus.
Prods., Inc. v. Gammage, 668 S.W.2d 319, 324 (Tex.1984).

 In Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex.
1983), the supreme court held that a store owner may be liable in a slip
and fall case even in the absence of actual or constructive knowledge
of the condition if there is evidence that the store owner failed to use
reasonable care to protect its customers from known and unusually
high risks. See Corbin, 648 S.W.2d at 295. In Corbin, the plaintiff
alleged that the manner in which grapes were displayed created an
unreasonable risk of harm. See id. The evidence showed that
customers frequently caused grapes to fall, creating a slippery material
on the floor. Safeway knew of this, yet failed to place a mat in front of
the display. See id. at 294. Accordingly, the court held that the store
owner's "knowledge of the unusually high risk of harm associated with
the self-serve display satisfied the knowledge requirement." Keetch,
845 S.W.2d at 265 (discussing Corbin); but see H.E. Butt Grocery Co.
v. Resendez, 988 S.W.2d 218, 219 (Tex.1999) ("the mere fact that a
store has a customer sampling display cannot, without more, be
evidence of a condition on the premises that poses an unreasonable risk
of harm"). 

 In the present case, San Juana Tamez and Baldemar Saenz, both
Wal-Mart maintenance employees, testified that there were more spills
on the ground when they had food demonstrations. Saenz testified,
however, that he would do his normal sweeping routine when there
were demonstrations unless he got a call. He swept the floor every two
or three hours for approximately forty-five minutes. Rodriguez, the
employee who handed out the burritos, testified that the area around
the demonstration table was not cleaned any more than the rest of the
store; it was cleaned in the morning and at night, or if there was a spill. 
She stated that no one would come by to check for spills. We conclude,
in accordance with the supreme court's opinion in Corbin, that Wal-Mart's knowledge of the unusually high risk of food falling on the floor
coupled with its failure to take preventative safety measures satisfies
the knowledge element. Thus, there is legally and factually sufficient
evidence to support this element. Wal-Mart's first issue is overruled.

 By its second issue, Wal-Mart asserts there is legally and factually
insufficient evidence that it failed to use reasonable care to reduce or
eliminate the risk in question. As previously discussed, Ortiz provided
evidence that Wal-Mart employees were aware that food was more
likely to be spilled on the floor when they had food demonstrations. 
There was also evidence that Wal-Mart did not take additional
measures to remove spills from the floor during the demonstrations. 
Thus, there is legally sufficient evidence that Wal-Mart failed to use
reasonable care to reduce or eliminate the risk in question. See H.E.
Butt Grocery Co. v. Godawa, 763 S.W.2d 27, 29 (Tex. App.--Corpus
Christi 1988, no writ) (when an occupier of land has actual or
constructive knowledge of any condition on the premises presenting an
unreasonable risk of harm to invitees, he has a duty to take whatever
action is reasonably prudent under the circumstances to reduce or
eliminate the unreasonable risk). 

 We also conclude there is factually sufficient evidence that Wal-Mart failed to use reasonable care to reduce or eliminate the risk. Wal-Mart notes that it provided evidence of its safety policies and
procedures that demonstrate it did not act unreasonably. This evidence
showed that Wal-mart has a policy that once an employee finds debris
on the floor, it is immediately removed. Rodriguez testified that she
was told, as an employee of Wal-Mart, to look out for spills. Wal-Mart
introduced a safety handbook requiring employees to look for and
remove hazards on the floor. Wal-Mart also presented evidence that it
has periodic meetings to ensure the safety of its customers and staff. 
Considering all of the evidence, however, we cannot say the jury's
finding that Wal-Mart failed to use reasonable care to reduce or
eliminate the risk is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust. The evidence is
legally and factually sufficient to support this finding. Wal-Mart's
second issue is overruled. 

 In its third issue, Wal-Mart contends the jury's award of damages
for past medical expenses,(1) physical pain, and mental anguish, as well
as future physical pain, mental anguish, and physical impairment is not
supported by legally or factually sufficient evidence and is grossly
excessive. Wal-Mart ostensibly challenges the sufficiency of the
evidence to support both proximate causation and damages in its
argument. That is, Wal-Mart contends the evidence shows a prior
accident and/or a degenerative condition, rather than the fall at the Wal-Mart store, caused her knee injury. Because the knee injury was the
foundation upon which all of the damages were based, Wal-Mart
maintains there was no evidence or insufficient evidence to support the
damages awarded. 

 We first examine whether there is legally or factually sufficient
evidence supporting the finding that Ortiz's fall in Wal-Mart proximately
caused her to suffer damages. Proximate cause is "that cause,
unbroken by any new and independent cause, which produces injury
and without which the injury would not have occurred." Portlock v.
Perry, 852 S.W.2d 578, 583 (Tex. App.­Dallas 1993, writ denied). 
Proximate cause consists of cause in fact and forseeability. Woodlawn
Mfg., Inc. v. Robinson, 937 S.W.2d 544, 549 (Tex. App.--Texarkana
1996, writ denied). Cause in fact "requires proof that an act or
omission was a substantial factor in bringing about injury which would
not otherwise have occurred." Prudential Ins. v. Jefferson Assocs., 896
S.W.2d 156, 161 (Tex. 1995). Cause in fact must be proven by
evidence of probative force, and cannot be established by mere
conjecture, guess, or speculation. See Doe v. Boys Clubs of Greater
Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). Whether a particular act
of negligence is a cause in fact of an injury is a particularly apt question
for jury determination. Farley v. M.M. Cattle Co., 529 S.W.2d 751, 756
(Tex. 1975). Foreseeability requires only that the general danger, not
the exact sequence of events that produced the harm, be foreseeable. 
Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756
(Tex. 1998); Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).

 Supporting the element of proximate cause, Bliss W. Clark, M.D.,
who performed Ortiz's initial orthoscopic surgery, stated in a letter that
Ortiz had problems with her left knee, "ostensibly secondary to a fall
she sustained at a Wal Mart store. As a result of this injury, she
sustained a tear to the medial meniscus cartilage in the knee. . . ." Dr.
Clark recommended a total knee replacement based on Ortiz's
condition. 

 R. W. Bassett, M.D., who performed the subsequent knee
replacement, testified as follows:

 Counsel: Okay. And based on the medical
records and based on what you saw
in Ms. Ortiz, it would appear that
probably even before this fall she had
a worn knee, correct?


 Dr. Bassett: Yes, sir.


 Counsel: Now based on what you­based on
your treatment of Ms. Ortiz and based
on­on what you saw when you
actually performed the surgery, do you
have an opinion as to whether this fall
was a factor in the necessity for this
knee replacement surgery?


 Dr. Bassett: I feel that this fall did contribute
to her pain and her problem. 
She already had worn cartilage;
and a fall of this nature can
damage the cartilage further. 


 From Dr. Clark's description, she did
have cartilage injury that looked new. 
By the time that I looked at the knee,
he had already cleaned up just as
much as he could, but he can't fill in
the hole that's all the way down to the
bone. We don't have any knee putty
that you can spackle into the hole
that's gone. 


 So, from what I can tell from his
description of minor symptoms
beforehand, from his description of
arthroscopy, from what I saw at the
time of surgery and her x-ray, I feel
that, one, she did have arthritic wear
involved in the knee beforehand; but
that, two, this fall probably did
contribute to the wear of that cartilage
and the damage . . . that was present. 



 Garza testified that her mother suffered pain as a result of the fall,
that she still has pain in her left leg, and that she has trouble walking. 
She was walking fine when she walked into the Wal-Mart. 

 Ortiz testified that immediately after she fell at Wal-Mart, she felt
pain in her entire body, including her legs. She told the emergency
room doctor that her whole body was hurting. Her left leg was hurting
while in the emergency room. 

 We conclude there is legally sufficient evidence that the fall in Wal-Mart proximately caused Ortiz's damages. 

 We next examine whether there is factually sufficient evidence
that the fall proximately caused Ortiz's damages. Wal-Mart notes that
Ortiz's medical records introduced into evidence indicate she hurt her
knee and heard a pop a few weeks before her slip at Wal-Mart. Wal-Mart also notes that the emergency report did not indicate that Ortiz
complained of her knee while in the emergency room after her slip and
fall in Wal-Mart. Because Ortiz apparently failed to complain of her
knee while at the emergency room and because she suffered a knee
injury a short time before her fall at Wal-Mart, Wal-Mart asserts that
appellant's knee injury was not the result of the fall at Wal-Mart, but
was instead caused by a pre-existing injury. 

 The testimony is conflicting as to what Ortiz complained of while
in the emergency room. The emergency room report indicates she did
not complain of pain in her knee, yet Ortiz testified she told the doctor
that her entire body hurt. Ortiz testified her knee hurt while in the
emergency room. Moreover, she explained that she does not speak
English very well. As for an explanation as to why Ortiz may not have
complained of her knee while in the emergency room, Dr. Bassett
testified that sometimes it takes a day or two to feel the results of an
injury, and that sometimes pain in one area can cloud the ability to
realize what has happened somewhere else. 

 Ortiz did not controvert the evidence that she hurt her knee a
couple of weeks before her fall at Wal-Mart and that it made a popping
sound. Nor did Ortiz deny she suffered from an arthritic condition in her
knee. Nonetheless, Dr. Bassett, who was aware of the arthritis in
Ortiz's knee, opined that the fall at Wal-Mart was a contributing factor
to her knee injury. Dr. Bassett acknowledged that there was arthritic
wear involved in the knee beforehand, but opined that the fall at Wal-Mart contributed to Ortiz's knee injury. He admitted on cross-examination that he was not aware of Ortiz's earlier fall, but did not
retract his opinion that the Wal-Mart fall contributed to Ortiz's knee
injury. Garza testified that her mother was walking fine when she went
into Wal-Mart, but was limping when she left. 

 Wal-Mart also notes that Ortiz's medical records show a long
history of headaches, chest pains, nausea, and various joint ailments. 
Ortiz was diagnosed as having osteoarthritis in 1980. She was
prescribed various medications to treat her ailments. 

 Proximate cause does not require a single causal factor. Rather,
the fall must have been a substantial factor in bringing about the injury. 
Prudential Ins., 896 S.W.2d at 161. Considering Dr. Bassett's
testimony, albeit impeached, Dr. Clark's letter, and the testimony of
Garza and Ortiz, we cannot say the jury's finding that the fall at Wal-Mart proximately caused Ortiz's injuries is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust. The jury could have properly concluded that Ortiz's
fall at Wal-Mart was a substantial factor in causing her injuries,
notwithstanding her arthritic condition, that her fall two weeks before
the fall at Wal-Mart did not break the chain of causation, and that
Ortiz's fall from the burrito was a foreseeable danger. There is legally
and factually sufficient evidence to support the finding that Ortiz's
injuries were a result of her fall in the Wal-Mart store and not a result
of a pre-existing injury. 

 Wal-Mart also challenges the legal and factual sufficiency of the
evidence to support damages for past medical expenses, physical pain,
and mental anguish. It is within the province of the jury to judge the
credibility of witnesses and the weight to be given their testimony
when evidence is conflicting. See Jim Walter Homes, Inc. v. Castillo,
616 S.W.2d 630, 634 (Tex. Civ. App.--Corpus Christi 1981, no writ). 
Because personal injury damages are unliquidated and are not capable
of certain measurement, the jury has broad discretion in assessing the
amount of damages in a personal injury case. See Transit Management
Co. of Laredo v. Sanchez, 886 S.W.2d 823, 826 (Tex. App.--San Antonio
1994, no writ); Baylor Medical Plaza Servs. v. Kidd, 834 S.W.2d 69, 78
(Tex. App.--Texarkana 1992, writ denied); Pipgras v. Hart, 832 S.W.2d
360, 366 (Tex. App.--Fort Worth 1992, writ denied). Damages for items
such as pain, suffering, mental anguish, and disfigurement are
incapable of precise measurement. We must defer to the jury's
discretion in determining awards for these elements of damages. See
George Grubbs Enters., Inc. v. Bien, 881 S.W.2d 843, 858 (Tex.
App.--Fort Worth 1994), rev'd on other grounds, 900 S.W.2d 337 (Tex.
1995); Arrington v. Paschall, 352 S.W.2d 866, 870 (Tex. Civ.
App.--Dallas 1961, writ ref'd n.r.e.). An award of mental anguish
damages can survive a legal sufficiency challenge when a plaintiff has
introduced direct evidence of the nature, duration, and severity of her
mental anguish. See Parkway Co. v. Woodruff, 901 S.W.2d 434, 444
(Tex. 1995). A mental anguish damages award requires evidence of a
"high degree of mental pain and distress" that is "more than mere worry,
anxiety, vexation, embarrassment, or anger." Stevens v. National Educ.
Centers, Inc., 11 S.W.3d 185, 185 (Tex. 2000). The proper standard of
review for excessive damages is factual sufficiency of the evidence. See
Rose v. Doctors Hosp., 801 S.W.2d 841, 847-48 (Tex.1990); Pope v.
Moore, 711 S.W.2d 622, 624 (Tex. 1986). 

 Regarding past medical expenses, Dr. R. W. Bassett testified that
the knee replacement surgery was necessary. Dr. Bassett explained
that the medical costs would include the costs of the replacement, the
operating room, the anesthesiologist, the medications during
hospitalization, physical therapy, and then therapy afterwards for a
period of time. Ortiz provided documentation of her medical expenses
from Valley Baptist Hosptial relating to her knee injury, which amounted
to over $23,000. The medical expenses from Dr. Bassett were
approximately $2,600. 

 As evidence of past physical pain and mental anguish damages,
Garza testified that after Ortiz fell, Ortiz was crying and screaming. 
Garza stated that her mother was in a lot of pain and crying when she
took her home from Wal-Mart. On the way to the hospital, Ortiz was
nauseated and vomiting. She had a headache and her knee and her leg
were in pain. Garza testified that Ortiz had severe pain while driving
her home from the emergency room. Garza testified that Ortiz is still in
pain, suffers pain in her left leg, and has trouble walking. 

 Ortiz testified that after her fall at Wal-Mart, she felt pain
throughout her body, including her head and legs. She was in a lot of
pain and she could not walk very well. Her entire body continued to
hurt at the emergency room, and she was nauseated and vomiting from
the pain. Ortiz testified that she told the doctor her entire body was
hurting. While she was talking to the emergency room doctor, her legs
were hurting. Her left knee was hurting while at the emergency room. 
A week or two after the accident, her entire body still hurt a lot and she
was having problems walking and had pain in her left knee. Eventually,
the pain in Ortiz's knee led her to visit a doctor, and to have surgery on
her knee. We conclude there is legally and factually sufficient evidence
to support the jury's award of past medical expenses, physical pain,
and mental anguish, and that the award of damages was not excessive.


 Wal-Mart next asserts that there is no evidence or insufficient
evidence supporting the damage awards for future physical pain,
mental anguish, or physical impairment. In support of these damages,
Garza testified that Ortiz continues to have pain in her left leg and has
trouble walking. Ortiz testified she is unable to do things which she
could before, such as bending her knee, walking a lot, and kneeling. 
She also testified that her knee still swells. She has pain in her left
knee, and when she walks a lot, her foot becomes swollen and hurts. 
A physical therapy evaluation form relates that Ortiz has had problems
with her left knee ever since she fell on it. She requires assistance to
get up or down, to get in and out of bed, to use the bedside commode,
and to use stairs. 

 Wal-Mart observes that the medical records from Dr. Bassett
indicate that Ortiz made gradual improvements after the knee
replacement; approximately two and a half months after the surgery,
Dr. Bassett recommended that she walk without a cane and work on
strengthening. 

 In the last recorded visit which occurred approximately three and
a half months after her knee replacement, Dr. Bassett indicated that
Ortiz had fallen again and reinjured her knee. The report indicated Ortiz
was to call in three weeks to report progress, and to return if she had
any pain. The records do not indicate that Ortiz returned or called. Dr.
Bassett testified she was doing well at the time of her last visit. Finally,
Wal-Mart contends there was no evidence of future impairment, as Dr.
Bassett did not indicate a need for future surgery on Ortiz's knee. Dr.
Bassett noted, however, that a replacement knee will never be as good
as the one with which a person is born. Based on the record before us,
we cannot say that the jury's finding regarding damages is so against
the great weight and preponderance of the evidence that it is manifestly
unjust. There is legally and factually sufficient evidence supporting the
jury's award of damages for future physical pain, mental anguish, and
physical impairment. Wal-Mart's third issue is overruled.

 The judgment of the trial court is AFFIRMED. 

 NELDA V. RODRIGUEZ

 Justice


Do not publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 3rd day of August, 2000.

1. Although Wal-Mart did not list past medical expenses in issue
three challenging the jury's award of damages, its underlying argument
in support of issue three in the brief did challenge past medical
expenses. Wal-Mart stated in its brief, "[f]rom this evidence it is
abundantly clear that the fall at Wal-Mart did not cause the initial
orthoscopic surgery nor the total knee replacement." Furthermore, Wal-Mart challenged past medical expenses during oral argument. In the
interest of justice, we will consider issue three as encompassing a
challenge to the jury's award of past medical expenses.