COURT OF APPEALS












COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

BARBARA BURNS,                                            )

                                                                              )             
No.  08-02-00159-CV

Appellant,                          )

                                                                              )                 Appeal from the

v.                                                                           )

                                                                              )              
101st District Court

BAYLOR HEALTH CARE SYSTEM,                 )

                                                                              )          
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# 01-00789-E)

                                                                              )

 

O
P I N I O N

 

Barbara Burns
appeals a motion to strike expert testimony and the summary judgment granted in
favor of Appellee Baylor Health Care System (ABaylor@)
in a premises liability action.   Ms. Burns
raises two issues on appeal:  (1) the
trial court abused its discretion by striking the expert witness=s testimony; and (2) the trial court
erred in granting summary judgment in favor of Appellee
Baylor Heath Care System because there was a material issue of fact in this
case.  We reverse the trial court=s judgment and remand this cause to the
trial court for further proceedings.

FACTUAL
SUMMARY








On October 6,
1999, Ms. Burns and her daughter traveled to the Baylor University Medical Center
Campus for a doctor=s
appointment and parked in one of the facility=s
underground parking lots.  After the
appointment, Ms. Burns and her daughter took an elevator back to the parking
garage.  Ms. Burns and her daughter
exited the elevator and proceeded to walk towards the direction in which they
had parked their car.  Ms. Burns took a
few steps and then fell from the curb in front of the elevators.  Ms. Burns asserts that she fell because the
parking garage floor and curb in front of the elevators were painted in such a
manner as to create the illusion that there was no curb.  Deposition photographic exhibits and
testimony show that the curb top was painted yellow and the parking garage
floor had a section of diagonal yellow stripes marking the area in front of the
elevators.

In the trial
court, Appellee Baylor moved for summary judgment
under Texas Rules of Civil Procedure 166a(c) and 166a(i)
on two elements of premises liability: 
whether the curb was a condition posing an unreasonable risk of harm and
whether Baylor had no actual or constructive knowledge of the premises defect,
if any, of which Ms. Burns complained. 
Ms. Burns timely filed a response to Baylor=s
motion and provided summary judgment evidence that included the affidavit and
curriculum vitae of Jack Madeley, a safety
engineering expert.  Baylor filed a reply
brief and a motion to strike the testimony of Ms. Burn=s
expert witness.  The trial court granted
Baylor=s motion
and granted summary judgment in favor of Baylor.  The trial court denied Ms. Burns= motion for reconsideration.  Ms. Burns now brings this appeal.

DISCUSSION

Motion
to Strike Expert Testimony

In her first
issue, Ms. Burns contends that the trial court abused its discretion in its decision
to exclude the testimony of her expert witness, Jack Madeley.  Baylor objected to Mr. Madeley=s
affidavit testimony on grounds that Mr. Madeley was
not qualified to be an expert and that his opinions did not meet the
requirements for expert testimony.  See
Tex.R.Evid. 702.








We review a trial
court=s
exclusion of expert testimony for an abuse of discretion.  See Gammill
v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718-19 (Tex. 1998); Broders v. Heise,
924 S.W.2d 148, 151 (Tex. 1996).  A trial
court abuses its discretion if it acts without reference to any guiding rules
or principles.  E.I. du Pont de Nemours & Co. v. Robinson, Inc., 923
S.W.2d 549, 558 (Tex. 1995).  A reviewing court cannot conclude that a
trial court abused its discretion if, in the same circumstances, it would have
ruled differently or if the trial court committed a mere error in judgment.  Id. 
Because the trial court did not specify on which ground it excluded
Mr. Madeley=s
testimony, we will affirm the trial court=s
ruling if any ground is meritorious.  See
K-Mart Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex.
2000).

Expert
Witness Qualifications








Texas Rule of
Evidence 702 provides:  AIf scientific, technical, or other
specialized knowledge will assist the trier of fact
to understand the evidence or to determine a fact in issue, a witness qualified
as an expert by knowledge, skill, experience, training, or education may
testify thereto in the form of an opinion or otherwise.@  Rule 702 contains three requirements for
admission of expert testimony:  (1) the
witness must be qualified; (2) the proposed testimony must be scientific,
technical, or specialized knowledge; and (3) the testimony must Aassist the trier
of fact to understand the evidence or to determine a fact in issue.@ 
Tex.R.Evid. 702; Robinson,
923 S.W.2d at 556.  The party offering
the expert=s
testimony bears the burden to prove that the witness is qualified under Rule
702.  See Gamill,
972 S.W.2d at 718; Broders, 924 S.W.2d at
151.  The role of the trial court in
qualifying experts is to ensure Athat
those who purport to be experts truly have expertise concerning the actual
subject about which they are offering an opinion.@  Broders, 924
S.W.2d at 152.  The offering party must
demonstrate that the expert witness possesses special knowledge as to the very
matter on which he proposes to give an opinion. 
Gammill, 972 S.W.2d at 718.  In addition, the requirements of reliability
and relevance apply to all expert testimony offered under Rule 702.  See Gammill,
972 S.W.2d at 725.

Ms. Burns argues
that the trial court abused its discretion in excluding Mr. Madeley=s affidavit because he has specialized
knowledge in the principles of safety engineering and the rules of hazard
control, and he has built his entire career on assessing risks to people and
attempting to engineer solutions to lessen those risks.  In its motion to strike Mr. Madeley=s
affidavit testimony, Baylor argued that while Mr. Madeley
had experience with safety issues, he did not have specialized knowledge
related to building construction and design.








Ms. Burns had the
burden to show that Jack Madeley was qualified to be
an expert based on his knowledge, skill, experience, training, or education on
the specific issues in this case.  See
Broders, 924 S.W.2d at 153-54.  The evidence before the trial court showed
that Mr. Madeley is the owner and principal
consultant of Madeley Safety Engineering
Consultants.  Mr. Madeley
holds a bachelor=s degree in
Industrial Engineering and a master=s
degree in Safety Engineering from Texas A&M University.  Mr. Madeley is a
board certified safety professional and a member of the American Society of
Safety Engineers, the System Safety Society, and the National Safety
Council.  From 1990 to 1997, Mr. Madeley worked as a consultant for Nelson & Associates,
advising in the following areas: 
accident cause analysis; industrial and consumer product safety
engineering; industrial and consumer product accident reconstruction;
construction safety; fire protection engineering; industrial (workplace) and
product safety management; industrial and product safety program development
and evaluation; premises safety (stairs, ramps, level surfaces); offshore and
land-based oilfield safety; human factors engineering analysis of workplace,
premises, and equipment (product) systems; risk assessment; and system safety
analysis.  From 1975 to 1989, Mr. Madeley worked as a Safety Engineer and Construction
Engineer for Marathon Oil Company and provided services which included
personnel safety, accident rate reduction, and safety system design review at
both onshore and offshore facilities.

Mr. Madeley has an extensive background in the field of safety
engineering and is board certified as a safety professional.  Further, Mr. Madeley=s qualifications included specialized
knowledge in premises safety and accident cause analysis.  Therefore, we conclude that Ms. Burns
carried her burden to provide proof of Mr. Madeley=s expert qualifications and specialized
knowledge on the issues relevant to her claim.

Expert
Testimony That Will Assist the Trier of Fact

Even if Mr. Madeley=s
credentials and experience were not determinative, it was also within the
discretion of the trial court to exclude his testimony if it was within the
common knowledge of the trier of fact.  Possession of knowledge and skill not held by
people generally does not in and of itself mean that such expertise will assist
the trier of fact. 
See Broders, 924 S.W.2d at 153; Honeycutt,
24 S.W.3d at 360.  Expert testimony
assists the trier of fact when the expert=s knowledge and experience on a
relevant issue are beyond that of the average juror and the testimony helps the
trier of fact understand the evidence or determine a
fact issue.  Honeycutt, 24 S.W.3d
at 360.  When the jury is equally
competent to form an opinion about the ultimate fact issues or the expert=s testimony is within the common
knowledge of the jury, the trial court should exclude the expert=s testimony.  Id.








Mr. Madeley=s
affidavit formed a significant part of the summary judgment evidence
Ms. Burns offered in reply to Baylor=s
summary judgment motion.  For the
purposes of preparing his affidavit testimony, Mr. Madeley
reviewed deposition testimony, color copies of photographs of the curb and
parking garage area, striping service invoices, and Baylor=s plans for re-striping the parking
garage.  Mr. Madeley
also relied on his understanding of literature related to safety engineering,
safety management, standard safety analysis techniques, human factors
engineering, and visual discrimination and awareness.








In his affidavit,
Mr. Madeley provided background information on the
accident process which he stated was a concept which recognizes that with
reasonable forethought, root causes of any resulting injury can be reasonably
anticipated and prevented.  Mr. Madeley then provided general fall type accident statistics
and stated that prevention of falls should be a major concern to employers,
engineers, architects, builders, and administrators of any building, facility,
or surface area.  Further, Mr. Madeley described the human vision during the walking
process, including the following points: 
(1) a person=s general
attention while walking is centered on various ever-changing points; (2) the
focusing of one=s line of
sight takes time for eye movement and focus, significantly limiting the number
of specific objects that can be truly seen and understood while walking; (3)
vision shifts involving differences in focal distance take additional time; (4)
most of what is seen while walking is perceived with peripheral vision and in
order to become aware of potential hazards in the walking surface, such hazards
must be conspicuous enough, unusual enough, and threatening enough to attract
special attention from a distance; and (5) if a walking surface hazard is not
specifically focused on and recognized as a hazard from a distance, perception
becomes particularly difficult after one approaches within the distance that
defines the outer or periphery limits of one=s
normal line of sight.  Mr. Madeley also briefly discussed the core principles of
safety engineering and cardinal rules of hazard control, including the
following points:  hazards are first to
be controlled by (1) hazard elimination or inherent safety designed or planned,
followed by (2) minimizing necessary hazards through the use of add-on safety
devices or features and remaining hazards are to be addressed by (3) the
development and publication of safe product, machine, equipment, or facility
use methods and practices.








After his outline
of general principles, Mr. Madeley then offered ten
foundational opinions and nine summary opinions and conclusions.  The ten foundational opinions addressed areas
of knowledge that Mr. Madeley believed Baylor knew or
should have known:  (1) its
responsibility to exercise reasonable care in establishing and maintaining a
premise free of recognized hazards; (2) the basic elements of premises accident
prevention programming; (3) the core principles of safety engineering and the
cardinal rules of hazard control; (4) safety engineering and safety management
techniques to identify, evaluate, and control reasonably foreseeable potential
premises safety hazards; (5) the severe injury potential associated with falls,
that falls are a leading cause of injury, and that such injury potential would
dictate focused attention on elimination or control of related hazardous
conditions or factors; (6) safer and reasonable alternative design of the
garage facility that would have prevented or significantly reduced the risk of
injury; (7) Baylor knew or should have specifically known the safety literature
that relates to single steps and visual acquisition of hazards while walking in
addition to minimum requirements of specific codes, standards, and regulations;
(8) as people increase in age the amount of light needed for visual acquisition
and discrimination generally increases; (9) Baylor knew or should have known
that a premises containing a hidden fall hazard, if allowed to be used by
patrons, only awaits the exposure of a certain number of persons to such
hazards before potential injury is certain to occur; and (10) proper accident
cause analysis must focus on the Aaccident
process.@

On appeal, Ms.
Burns asserts that Mr. Madeley=s
specialized knowledge on the human visual process assists the trier of fact by explaining visual focus while walking and
how the way the curb was painted and the parking garage floor may have created
the optical illusion of a flat surface. 
Ms. Burns also contends that Mr. Madeley=s testimony assists the trier of fact to understand that the curb and parking
garage floor should have been painted in a way that would not have created an
optical illusion, that it was possible for Baylor to identify, evaluate, and
control the hazard before someone fell, and that a stair is a hazard and
painting hazards in a certain way can decrease the risk of injury.

Mr. Madeley=s
affidavit testimony provides depth or precision to the trier
of fact=s
understanding of a relevant issue in this case. 
ARule 702
makes inadmissible expert testimony as to a matter which obviously is within
the common knowledge of jurors because such testimony, almost by definition,
can be of no assistance.@  Honeycutt, 24 S.W.3d at 360, quoting
Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir.
1986).  Mr. Madeley
possesses specialized knowledge of the human visual process, which is not
obviously within the common knowledge of jurors.  Therefore, we conclude that Ms. Burns carried
her burden to provide proof that Mr. Madeley=s opinions would have assisted the trier of fact to understand the evidence or to determine a
fact in issue and were beyond the common knowledge of the trier
of fact.

Relevance
and Reliability of Expert Witness Testimony








In its motion to
strike, Baylor also argued that Mr. Madeley=s opinions were not relevant to the
issues in the case and it questioned the reliability of Mr. Madeley=s research methods.  Rule 702 requires that an expert=s testimony be relevant and based on a
reliable foundation.  Robinson,
923 S.W.2d at 556.  To be relevant, the
proposed testimony must be Asufficiently
tied to the facts of the case that it will aid the jury in resolving a factual
dispute.@  Id.,
citing United States
v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985).  Mr. Madeley=s affidavit testimony had a clear
relationship to the issues of premises liability and safety disputed in the
case.  The trial court could not have
based its exclusion of Mr. Madeley=s testimony on relevancy grounds.








Turning to Baylor=s reliability challenge, the trial
court was required to Aevaluate
the methods, analysis, and principles relied upon in reaching the opinion  . . . [in order to] ensure that the opinion
comports with applicable professional standards outside the courtroom and that
it >will have a reliable basis in the
knowledge and experience of [the] discipline.=@ 
Gammill, 972 S.W.2d at 725‑26.  AThe
trial court is not to determine whether an expert=s
conclusions are correct, but only whether the analysis used to reach them is
reliable.@  Id.
at 728.  In Robinson, the Texas
Supreme Court identified several factors to consider in determining whether
scientific evidence is reliable and thus, admissible under Rule 702.[1]  Robinson, 923 S.W.2d at 557.  However, the Court in Gammill
recognized that the Robinson factors for assessing the reliability of
scientific evidence cannot be applied to non-scientific testimony.  See Gammill,
972 S.W.2d at 726.  For such instances,
the Gammill Court adopted the Aanalytical gap@
analysis for assessing reliability by which the trial court may determine that
there is too great an analytical gap between the data the expert relies upon
and the opinion offered.  Id.
at 727; Exxon Pipeline Co. v. Zwahr, 88 S.W.3d
623, 629 (Tex. 2002).  Such an analytical gap exists if an expert
fails to demonstrate how his or her observations support his or her
conclusions.  See Gammill,
972 S.W.2d at 727. 

From his affidavit
testimony, it is clear that Mr. Madeley=s opinions were based on the
application of his knowledge and training to the underlying facts in the case,
rather than on scientific methods.  As a board
certified safety engineer, Mr. Madeley reviewed
deposition testimony, color photographs of the location of Ms. Burn=s fall, particularly the curb and its
surroundings, consulted research related to safety engineering, safety
management, standard safety analysis techniques, human factors engineering and
visual discrimination and awareness, and reviewed Baylor=s
re-striping plans.  








In his affidavit,
Mr. Madeley provided significant detail on his
knowledge of the accident process and description of the human visual system
while walking.  Mr. Madeley
also discussed the core principles of safety engineering and hazard
control.  Based on this methodology,
Mr. Madeley opined that:  (1) Baylor failed to properly design and/or
mark the walkway surface of the parking lot; (2) the unsafe condition and/or
causative factor was a poorly-marked curb step that appears difficult to
visually discriminate under certain conditions; (3) Baylor failed to provide a
premises free of recognized and reasonably foreseeable hazards likely to result
in death or severe injury to persons using the premises; (4) Baylor failed to
establish and/or failed to properly implement the basic elements of premises
safety programming; (5) Baylor failed to utilize the core principles of safety
engineering and rules of hazard control, relying instead on workers and patrons
to cope with unguarded physical hazards rather than removing or safeguarding
against those hazards; (6) Baylor apparently failed to properly inspect and
evaluate the design and marking of the curb and walkway; (7) Baylor failed to
provide a safer reasonably available alternative design; (8) Baylor failed to
exercise ordinary care to adhere to authoritative references and standards
relating to the hazards that should have been identified; and (9) the above
conditions were more than likely producing and proximate causes of the incident
and related injuries that occurred to Ms. Burns.

From Mr. Madeley=s
research and observations of the underlying facts in the case, Mr. Madeley arrived at his conclusions regarding what he
considered an unsafe condition--a poorly designed and/or marked curb step--and
then made subsequent inferences as to Baylor=s
failure to remedy the hazard.  Mr. Madeley=s
extensive background in safety engineering and safety management, along with
his affidavit testimony concerning the application of his knowledge and
experience to the underlying facts, sufficiently demonstrate that his opinions
were reliable.  The trial court=s function was not to determine whether
Mr. Madeley=s
conclusions were correct, but only whether the analysis used to reach them was
reliable.  See Gammill,
972 S.W.2d at 728.  After reviewing all
of Baylor=s
contentions, we find that there was no basis for the trial court to have stricken
Mr. Madeley=s
testimony.  Accordingly, we conclude that
the trial court abused its discretion in excluding Mr. Madeley=s testimony under Rule 702.  Issue One is sustained.

Granting
of Summary Judgment








In Issue Two, Ms.
Burns asserts that the trial court erred in granting summary judgment in favor
of Baylor because there were fact issues regarding whether the curb presented
an unreasonable risk of harm and Baylor=s
actual or constructive knowledge of the condition.  Baylor moved for summary judgment on both
traditional and no-evidence grounds. 
Without specifying the basis for its ruling, the trial court granted
summary judgment in favor of Baylor. 
When the summary judgment does not specify the grounds relied on, it
will be affirmed on appeal if any of the grounds presented in the motion are
meritorious.  See Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

Standard
of Review 

The movant for traditional summary judgment has the burden of
showing there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law.  See Tex.R.Civ.P. 166a(c).  A defendant is entitled to summary judgment
when he or she disproves, as a matter of law, one of the essential elements of
each of the plaintiff=s
causes of action.  Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.
1991).  In deciding whether there is a
disputed material fact issue precluding summary judgment, all admissible
evidence favorable to the 

non-movant
must be taken as true; all reasonable inferences must be indulged in favor of
the non-movant and all doubts resolved in the non-movant=s
favor.  Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548‑49 (Tex. 1985); Collins
v. County of El Paso, 954 S.W.2d 137, 145 (Tex.App.--El
Paso 1997, pet. denied).








A no-evidence
summary judgment is essentially a pretrial directed verdict and, as such, we
apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict.  Wyatt v. Longoria, 33 S.W.3d 26, 31 (Tex.App--El Paso 2000, no pet.).  The party moving for no-evidence summary
judgment must specifically state the elements as to which there is no
evidence.  Tex.R.Civ.P. 166a(i).  The burden then shifts to the non-movant to produce evidence raising a fact issue on the
challenged elements.  Id.  A no-evidence summary judgment is improperly
granted if the respondent brings forth more than a scintilla of probative
evidence to raise a genuine issue of material fact.  See id.; Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997), cert. denied, 523 U.S. 1119, 118 S.Ct.
1799, 140 L.Ed.2d 939 (1998).  More than
a scintilla of evidence exists when reasonable and fair-minded people would
differ in their conclusions.  Havner, 953 S.W.2d at 711.  When reviewing a no-evidence summary
judgment, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and
inferences.  Id.

Challenged
Elements of the Premises Liability Claim

The elements of a
premises liability cause of action are: 
(1) the owner/operator had actual or constructive knowledge of some
condition on the premises; (2) the condition posed unreasonable risk of harm;
(3) the owner/operator did not exercise reasonable care to reduce or eliminate
the risk of harm; and (4) the owner/operator=s
failure to use such care proximately caused the plaintiff=s injuries.  See Keetch
v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992); Corbin v. Safeway
Stores, Inc., 648 S.W.2d 292, 295 (Tex. 1983).  In its hybrid motion, Baylor urged that, as a
matter of law, the curb was not a condition presenting an unreasonable risk of
harm and Baylor had no actual or constructive knowledge of the premises defect,
if any.  Baylor also asserted that there
was no evidence of a condition that posed an unreasonable risk of harm and no
evidence that Baylor had actual or constructive knowledge of that condition, if
any.  We first address the no-evidence
grounds contained in Baylor=s
motion.

Condition
Posing an Unreasonable Risk of Harm








Ms. Burns argues
on appeal that there was evidence that the curb in Baylor=s parking garage presented an
unreasonable risk of harm because of the lighting, the construction, the method
of painting, and the optical illusion it created.  Specifically, there was probative evidence
that the way the curb was painted posed an unreasonable risk in that it created
an optical illusion that there was no curb. 
AA
condition presenting an unreasonably risk of harm is one in which  there is such a probability of a harmful
event occurring that a reasonably prudent person would have foreseen it or some
similar event as likely to happen.@  Wyatt v. Furr=s Supermarkets, Inc., 908 S.W.2d
266, 269 (Tex.App.--El Paso 1995, writ denied), citing
Seideneck v. Cal Bayreuther  Assoc., 451 S.W.2d 752, 754 (Tex.
1970).

In response to
Baylor=s summary
judgment motion, Ms. Burns submitted the following summary judgment
evidence:  Mr. Madeley=s affidavit and curriculum vitae, her
deposition with photograph exhibits and the deposition of Keith Howse, the Assistant Director of Public Safety for the
Baylor University Medical Center Campus, with photograph exhibits.  In her deposition testimony, Ms. Burns was
asked to describe the accident.  According
to Ms. Burns, she and her daughter came off the elevator and were headed to the
parking lot.  The next thing she knew,
she heard her head hit the cement and she was down on the pavement.  Ms. Burns stated that she did not see a
curb.  When asked whether she recalled
where she was looking at the time, Ms. Burns stated that she was probably
looking straight ahead.

In his deposition,
Mr. Howse noted his familiarity with the area where
Ms. Burns fell and stated that he conducts a general patrol of that garage
several times a week.  After reviewing a
photograph exhibit, which depicts the area from the perspective of someone
coming out of the elevators and walking forward towards her vehicle, Mr. Howse acknowledged that the curb was difficult to see under
those conditions as they appear in the photograph.








In her summary
judgment evidence, Ms. Burns included numerous photographs of the location of
her fall in the Baylor parking garage. 
The photographs clearly lend support to Ms. Burn=s claim that the way the curb and
surroundings were painted made that curb difficult to see.  Together with deposition testimony by Ms.
Burns and Mr. Howse, Ms. Burns produced some evidence
that created a fact issue as to whether the curb posed an unreasonable risk of
harm.  

Actual
or Constructive Knowledge

The fact that the
owner or occupier of a premises created a condition that posed an unreasonable
risk of harm may support an inference of knowledge.  Keetch, 845
S.W.2d at 265.  Creating the condition
does not establish knowledge as a matter of law for purposes of premises
liability, however, creation of the condition is circumstantial evidence of
knowledge.  See id. at 266.  In premises cases, constructive knowledge can
be established by showing that the condition had existed long enough for the
owner or occupier to have discovered it upon reasonable inspection.  CMH Homes, Inc. v. Daenen,
15 S.W.3d 97, 102‑03 (Tex.
2000).








In its motion,
Baylor also asserted that there was no evidence that it had actual or
constructive knowledge of a condition posing an unreasonable risk of harm.  In response, Ms. Burns presented summary
judgment evidence to raise a fact issue as to whether Baylor had constructive
knowledge of the condition of the curb. 
In his deposition testimony, Mr. Howse stated
that as Assistant Director of Public Safety at Baylor, he supervises the
parking division, which consists of forty personnel who operate the campus
parking lots.  Mr. Howse
is also in charge of physical security and transportation services related to
the parking division.  Part of Mr. Howse=s
general supervisory duties include general patrol and personnel review in the
parking garage where Ms. Burns fell.  Mr.
Howse stated that in October 1998, a year before
Ms. Burns fell, the parking garage was re-striped.  Though Mr. Howse
was Assistant Public Safety Director for the parking division at that time, he
did not know why the garage was re-striped. 
Upon viewing a photograph of the area where Ms. Burns fell, as one would
exit from the elevators walking forward, Mr. Howse
acknowledged that the curb was difficult to see under those conditions as they
appeared in the photograph.  It is
undisputed among the parties that use of the elevator entrance in the parking
garage was a principle egress and ingress into the Baylor facility.  Mr. Howse regularly
patrolled the parking garage for the facility and therefore we can reasonably
infer that he had ample opportunities to inspect the re-striped curb and
surroundings during the year before Ms. Burns fell.

More than a
scintilla of evidence exists if the evidence Arises
to a level that would enable reasonable and fair‑minded people to differ
in their conclusions.@  Havner, 953
S.W.2d at 711.  Viewing the evidence in
the light most favorable to Ms. Burns, and disregarding all contrary evidence
and inferences, we hold that there was more than a scintilla of evidence as to
whether Baylor had constructive knowledge of the curb=s
dangerous condition.  See Nixon,
690 S.W.2d at 548‑49.  The same
evidence precluding no-evidence summary judgment precludes granting traditional
summary judgment against Ms. Burns. 
Accordingly, we find that the trial court erred in granting summary
judgment in favor of Baylor.  Issue Two
is sustained.

We reverse the
trial court=s
judgment and remand the cause for further proceedings consistent with this
opinion.

 

 

September
19, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 5

McClure, J., Chew, J., and Hill, C.J. (Ret.)

Hill, C.J., (Ret.)(Sitting by Assignment)











[1]
The Robinson factors include, but are not limited to:  (1) the extent to which the theory has been
or can be tested; (2) the extent to which the technique relies upon the
subjective interpretation of the expert; (3) whether the theory has been
subjected to peer review and/or publication; (4) the technique=s potential rate of error; (5) whether
the underlying theory or technique has been generally accepted as valid by the
relevant scientific community; and (6) the non‑judicial uses which have
been made of the theory or technique.  Robinson,
923 S.W.2d at 557.