COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-314-CV

 

 

CATHERINE BILLMEIER                                                         APPELLANT

 

                                                   V.

 

BRIDAL SHOWS, INC.                                                             APPELLEE

 

                                              ------------

 

            FROM THE 48TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








This is
a slip-and-fall case.  Appellant
Catherine Billmeier appeals the trial court=s grant
of summary judgment in favor Appellee Bridal Shows, Inc. (ABSI@).  In two issues, Billmeier argues that the
trial court erred by granting BSI=s motion
for summary judgment because she is not limited to pursuing a premises defect
claim against BSI and because disputed material fact issues exist on her
claims.  We will affirm.

                          II. 
FACTUAL AND PROCEDURAL BACKGROUND

BSI produces consumer bridal trade events at
which vendors display and advertise their products and services to the
public.  Pursuant to a license agreement,
the City of Fort Worth agreed to rent the Will Rogers Memorial Center to BSI
for the purpose of conducting such a bridal show on July 23 and 24, 2005.  Billmeier attended the bridal show on July 24
as a bridal consultant working for Bed Bath & Beyond.








Upon the show=s
conclusion at approximately 5:00 p.m. on July 24, the vendors, including Bed
Bath & Beyond, began the process of Atearing
down@ their
booth displays and taking the items from the displays to their vehicles.  The vendors were permitted to drive their
vehicles into part of the exhibit hall through a large door located at the back
of the hall.  A number of SUVs, U‑Hauls,
and pickup trucks entered the exhibit hall and were lined up, loading display
items.  Billmeier=s boss
asked Billmeier to retrieve the U-Haul that Bed Bath & Beyond had rented to
transport its display items to the bridal show. 
As Billmeier headed towards a back exit, negotiating her way around the
vehicles and people entering and exiting the exhibit hall, she slipped and fell
forward on her knees, allegedly injuring herself.  She was carrying a few metal drapery rods
when she fell.

According to Billmeier, after her fall, she
noticed that there was a clear, water-like substance on the surface of the
concrete floor and that her ankle felt Aa little@
wet.  She did not see the substance until
after she fell, she does not know how the substance came to be on the floor,
nor does she know how long the substance had been there before she fell.  Billmeier did, however, recall there being a
blue pickup truck that was located in the doorway and waiting in a line with
other vehicles.  She assumed that the
truck had its engine and air conditioner running because it was 108 degrees
that day.








Jack Brown was at the bridal show on July 24,
2005, acting as a Agofer@ for
Naomi Hulme, BSI=s president.  He observed Billmeier, who was carrying bed
rails and Aseveral different things,@ fall
near one of the exhibit hall=s dock
doors.  Brown noticed a spot of water
near where Billmeier fell that measured about three inches in diameter and
appeared to be smeared or disturbed. 
According to Brown, Billmeier fell in the same spot where a small SUV
had been parked for approximately twenty minutes.  In his affidavit, Brown stated that Billmeier
Aslipped
and fell to her knee in some water . . . that had been left by air-conditioning
condensation from the SUV.@  But Brown never saw the SUV leak any
condensation or water; when the vehicle pulled away, the water was just
there.  Brown opined at his deposition
that the substance could have originated from Aany
number of things.@

Lance Sanders worked security detail at the
bridal show.  He observed Billmeier
having difficulty carrying a couple of Aawkwardly
large objects@ just before she lost control of
the objects and fell down to the floor. 
Sanders recounted that the objects that Billmeier was carrying measured
approximately ten feet long.  He did not
observe any substance on the exhibit hall floor that could have caused or
contributed to Billmeier=s fall.

Billmeier sued BSI in July 2007.  She alleged that she Awas
seriously injured as a result of a dangerous condition in that there was
moisture on the floor where the event was being held@ and
that BSI Anegligently permitted the floor
to become wet and slippery, negligently or willfully allowed such condition to
continue[,] and negligently or willfully failed to warn Plaintiff of the
condition of the floor.@ 
Billmeier further alleged that the Acondition
existed despite the fact that [BSI] or [BSI=s]
agents knew or should have known of the existence of the aforementioned
condition and that there was likelihood of a person being injured as occurred
to Plaintiff.@[2]













BSI filed a motion for summary judgment arguing
(1) that Billmeier=s negligence claims are barred
as a matter of law because Athis is
a pure premises liability case@ and (2)
that there is no evidence that BSI had actual or constructive knowledge of the
substance on the surface of the exhibit hall.[3]  Billmeier thereafter filed a first amended
original petition that included the following additional allegations of
negligence attributed to BSI:  A[f]ailing
to control the flow of vehicular and pedestrian traffic in the show room area
so that leaks and drips from condensation would not create a hazardous
condition@; A[f]ailing
to use ropes, cones, or other devices to control and restrict the flow of
pedestrian and vehicular traffic@; A[f]ailing
to prohibit vehicles from the showroom floor area@; Afailing
to direct, manage[] and conduct the take down period in a reasonably safe
manner@; Afailing
to direct, manage and conduct the bridal show in a reasonably safe manner@; Afailing
to plan and organize the take down of the bridal show in a reasonabl[y] safe
manner@; Afailing
to give adequate direction and instruction to the persons controlling the
traffic in the show room area@; Afailing
to correct the dangerous condition as soon as it was discovered@; and Afailing
to warn of the dangerous condition as soon as it was discovered.@  The trial court granted BSI=s motion
for summary judgment.  This appeal
followed.

                              III.  SUMMARY JUDGMENT STANDARDS

When the movant seeks summary judgment on
traditional grounds, the issue on appeal is whether the movant met the summary
judgment burden by establishing that no genuine issue of material fact exists
and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








Under the no-evidence standard, after an adequate
time for discovery, the party without the burden of proof may, without
presenting evidence, move for summary judgment on the ground that there is no
evidence to support an essential element of the nonmovant=s claim
or defense.  Tex. R. Civ. P.
166a(i).  The motion must specifically
state the elements for which there is no evidence.  Id.; Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.  See Tex. R. Civ.
P. 166a(i) & cmt.; Sw. Elec. Power Co., 73 S.W.3d at 215.

When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d 291, 292
(Tex. 2006).  If the nonmovant brings
forward more than a scintilla of probative evidence that raises a genuine issue
of material fact, then a no-evidence summary judgment is not proper.  Moore v. K Mart Corp., 981 S.W.2d 266,
269 (Tex. App.CSan Antonio 1998, pet.
denied).  We review a no‑evidence
summary judgment for evidence that would enable reasonable and fair‑minded
jurors to differ in their conclusions.  Hamilton
v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).

                                IV.  NEGLIGENT ACTIVITY CLAIMS

In her first issue, Billmeier argues that the
trial court erred by granting BSI=s motion
for summary judgment on her negligent activity claims.  She contends that she is not limited to
asserting a premises defect claim as a matter of law because her summary
judgment evidence demonstrates that she was injured contemporaneously with ongoing
negligent activity.








An owner or occupier of land has a duty to use
reasonable care to keep the premises under his control in a safe
condition.  Redinger v. Living, Inc.,
689 S.W.2d 415, 417 (Tex. 1985).  The
owner or occupier may be liable for negligence in two situations:  (1) those arising from a premises defect and
(2) those arising from an activity or instrumentality.  Id.; Plainview Motels, Inc. v.
Reynolds, 127 S.W.3d 21, 34 (Tex. App.CTyler
2003, pet. denied).  When the alleged
injury is the result of the premises=s
condition, the injured party can only recover under a premises defect
theory.  H.E. Butt Grocery Co. v.
Warner, 845 S.W.2d 258, 259 (Tex. 1992); see also State v. Shumake,
199 S.W.3d 279, 284 (Tex. 2006) (stating that a premises defect claim is based
on the existence of an unsafe condition on property); Trevino v. NVG N.
Village Green I Ass=n, Inc., No.
14-07-00240-CV, 2008 WL 4367298, at *2 n.2 (Tex. App.CHouston
[14th Dist.] Sept. 25, 2008, no pet.) (mem. op.).  To recover under a negligent activity theory,
the injured party must have been injured by, or as a contemporaneous result of,
the activity itself, not by a condition the activity created.  Keetch v. Kroger Co., 845 S.W.2d 262, 264
(Tex. 1992); Carbonara v. Tex. Stadium Corp., 244 S.W.3d 651, 657 (Tex.
App.CDallas
2008, no pet.).













Here, Billmeier allegedly slipped and fell when
she contacted a clear, water-like substance on the surface of the concrete
floor in the exhibit hall.  Brown
theorized in his affidavit attached to Billmeier=s
summary judgment response that the substance was air-conditioning condensation
left from an SUV that had been parked for twenty minutes in the same spot where
Billmeier slipped and fell.  Billmeier
seemed to speculate similarly in her deposition.  She recalled there being a blue pickup truck
that was located in the doorway and waiting in a line with other vehicles, and
she assumed that the truck had its engine and air conditioner running because
it was 108 degrees that day.  But whether
the substance that Billmeier slipped on originated from a vehicle or from some
other source, the substance on the floor was a condition of the premises.  See, e.g., Warner, 845 S.W.2d at 259
(identifying a puddle of water, chicken blood, and other fluids that had
accumulated on the floor as a condition of the premises); June v. Dan Kirby
Assocs., No. 14-94-00561-CV, 1995 WL 506012, at *1B2 (Tex.
App.CHouston
[14th Dist.] Aug. 24, 1995, writ denied) (not designated for publication)
(identifying a wet floor caused by mopping as a condition of the
premises).  Billmeier alleged in her
petition that she sustained her injuries Aas a
result of a dangerous condition in that there was moisture on the floor.@  [Emphasis added.]  Because Billmeier=s
alleged injuries resulted from a condition of the premises, her only potential
cause of action is limited to a premises liability theory.  See Warner, 845 S.W.2d at 259; see
also Shumake, 199 S.W.3d at 284; Trevino, 2008 WL 4367298, at *2
n.2.








Billmeier contends that she was injured
contemporaneously with ongoing negligent activityCpermitting
pedestrian and vehicular traffic in the same area where she fellCbecause Ashe was
injured just a few seconds after the Ford SUV pulled away from where it had
idled for 20 minutes, leaving a small puddle of condensation.@  Her argument is unpersuasive for a few
reasons.  Billmeier attempts to forge her
premises defect claim into a negligent activity claim by alleging multiple
negligent activities attributable to BSI, e.g., allowing vehicles to be driven
into the exhibit hall.  As BSI points
out, however, adroit phrasing of the pleadings to encompass design defects, per
se negligence, or any other theory of negligence does not affect application of
premises liability law.[4]  McDaniel v. Cont=l
Apartments Joint Venture, 887 S.W.2d 167, 171 (Tex. App.CDallas
1994, writ denied).  Although Billmeier
may have been injured by a condition created by allowing vehicles into
the exhibit hall, she was not injured by the activity of allowing
vehicles into the exhibit hall.  See
Keetch, 845 S.W.2d at 264.  Billmeier=s
pleadings and argument blur the distinction between liability stemming from
negligent activity and liability based on a premises defect.  This is inconsistent with supreme court
precedent addressing negligent activity theory and premises defect case
law.  See Shumake, 199 S.W.3d at
284; Keetch, 845 S.W.2d at 264.

Moreover, even considering Billmeier=s
argument as stated, assuming that the substance on the floor originated from
the SUV, the evidence does not demonstrate that Billmeier=s slip
and fall was a contemporaneous result of BSI=s
alleged negligent activity of allowing the SUV to drive into the exhibit
hall.  Billmeier slipped and fell after
the SUV had left the exhibit hall.

Because Billmeier=s
injuries resulted from an alleged condition of the premises, not by, or as a
contemporaneous result of, an alleged negligent activity, we hold that the
trial court did not err by granting summary judgment in favor of BSI on the
ground that Billmeier is limited to asserting a premises defect case as a
matter of law.  We overrule Billmeier=s first
issue.

                                   V.  PREMISES DEFECT CLAIM

In her second issue, Billmeier argues that the
trial court erred by granting BSI=s motion
for summary judgment because A[t]here
are disputed issues of material fact such that summary judgment should not have
been granted.@[5]








Billmeier does not dispute that the elements of
her premises liability claim are as follows: 
(1) actual or constructive knowledge of a condition on the premises by
the owner or occupier; (2) the condition posed an unreasonable risk of harm;
(3) the owner or occupier did not exercise reasonable care to reduce or
eliminate the risk; and (4) the owner or occupier=s
failure to use such care proximately caused the plaintiff=s
injuries.  Keetch, 845 S.W.2d at
264; Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983); Reid
v. Compass Group USA, Inc., 172 S.W.3d 203, 209 (Tex. App.CEl Paso
2005, no pet.).  A slip-and-fall
plaintiff satisfies the notice element by establishing that (1) the defendant
placed the substance on the floor, (2) the defendant actually knew that the
substance was on the floor, or (3) it is more likely than not that the
condition existed long enough to give the premises owner a reasonable
opportunity to discover it.  Wal-Mart
Stores, Inc. v. Reece, 81 S.W.3d 812, 814 (Tex. 2002); Wal-Mart Stores,
Inc. v. Diaz, 109 S.W.3d 584, 587 (Tex. App.CFort
Worth 2003, no pet.).








There is scant evidence relevant to the issue of
notice.  There is no evidence that Brown
noticed the substance on the floor before Billmeier slipped and fell.  In his affidavit, Brown recounted that A[t]he
water was unnoticeable until after [Billmeier] slipped.@  Sanders, who claimed to have near perfect
vision, did not recall observing any substance on the exhibit hall floor that
could have caused or contributed to Billmeier=s
fall.  Hulme=s
deposition testimony includes no evidence relevant to the notice issue.[6]  Billmeier testified in her deposition that
she did not see the substance until after she fell, that she does not know how
the substance came to be on the floor, and that she does not know how long the
substance had been there before she fell. 
Billmeier also stated that it would have been Adifficult@ to see
the substance had she been looking at the ground while walking towards the
exhibit hall=s exit instead of looking at the
people and vehicles around her.








Having examined the entire record in the light
most favorable to Billmeier, indulging every reasonable inference and resolving
any doubts against BSI=s motion, we hold that Billmeier
failed to produce summary judgment evidence raising a genuine issue of material
fact that BSI had actual or constructive knowledge of the substance on the
exhibit hall floor.  See Tex. R.
Civ. P. 166a(i).  We overrule Billmeier=s second
issue.

                                          VI.  CONCLUSION

Having overruled Billmeier=s two
issues, we affirm the trial court=s
judgment.

 

BILL
MEIER

JUSTICE

 

PANEL:  CAYCE, C.J.; MCCOY and MEIER, JJ.

 

DELIVERED:  April 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]Billmeier additionally
alleged that BSI was negligent for A[f]ailing to properly inspect and maintain the
flooring area in question to discover the dangerous condition,@ A[f]ailing to maintain the
floor in a reasonably safe condition,@ and A[f]ailing to give adequate and understandable
warnings to Plaintiff of the unsafe condition of the flooring area.@





[3]We construe BSI=s motion as moving for
summary judgment on both traditional and no-evidence grounds.  See Binur v. Jacobo, 135 S.W.3d 646,
650B51 (Tex. 2004)
(permitting hybrid motions for summary judgment).





[4]AThat which looks like a
duck, walks like a duck, and quacks like a duck will be treated as a duck even
though some would insist upon calling it a chicken.@  Tidelands Marine Serv. v. Patterson,
719 F.2d 126, 128 n.3 (5th Cir. 1983).





[5]Considering the extent of
Billmeier=s argument in her second
issue, it is unclear whether she is arguing that genuine issues of material
fact exist as to her premises liability claim, whether genuine issues of
material fact exist as to her negligent activity claim, or whether genuine
issues of material fact exist as to both claims.  To the extent Billmeier intends to argue that
genuine issues of material fact exist as to her negligent activity claims,
those arguments are without merit because we have already determined above that
the trial court did not err by granting BSI summary judgment on her negligent
activity claims.  Accordingly, we
construe Billmeier=s second issue as
contending that genuine issues of material fact exist on her premises liability
claim.





[6]Hulme was not even sure
that Billmeier fell as a result of slipping in the substance on the floor.