

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-314-CV

CATHERINE BILLMEIER                                          APPELLANT

V.

BRIDAL SHOWS, INC.                                          APPELLEE

------------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This is a slip-and-fall case.  Appellant Catherine Billmeier appeals the trial

court's grant of summary judgment in favor Appellee Bridal Shows, Inc. ("BSI").

In two issues, Billmeier argues that the trial court erred by granting BSI's motion

for summary judgment because she is not limited to pursuing a premises defect

---

[1] *See* Tex. R. App. P. 47.4.

claim against BSI and because disputed material fact issues exist on her claims. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

BSI produces consumer bridal trade events at which vendors display and advertise their products and services to the public. Pursuant to a license agreement, the City of Fort Worth agreed to rent the Will Rogers Memorial Center to BSI for the purpose of conducting such a bridal show on July 23 and 24, 2005. Billmeier attended the bridal show on July 24 as a bridal consultant working for Bed Bath & Beyond.

Upon the show's conclusion at approximately 5:00 p.m. on July 24, the vendors, including Bed Bath & Beyond, began the process of "tearing down" their booth displays and taking the items from the displays to their vehicles. The vendors were permitted to drive their vehicles into part of the exhibit hall through a large door located at the back of the hall. A number of SUVs, U-Hauls, and pickup trucks entered the exhibit hall and were lined up, loading display items. Billmeier's boss asked Billmeier to retrieve the U-Haul that Bed Bath & Beyond had rented to transport its display items to the bridal show. As Billmeier headed towards a back exit, negotiating her way around the vehicles and people entering and exiting the exhibit hall, she slipped and fell forward on

2

her knees, allegedly injuring herself. She was carrying a few metal drapery rods when she fell.

According to Billmeier, after her fall, she noticed that there was a clear, water-like substance on the surface of the concrete floor and that her ankle felt "a little" wet. She did not see the substance until after she fell, she does not know how the substance came to be on the floor, nor does she know how long the substance had been there before she fell. Billmeier did, however, recall there being a blue pickup truck that was located in the doorway and waiting in a line with other vehicles. She assumed that the truck had its engine and air conditioner running because it was 108 degrees that day.

Jack Brown was at the bridal show on July 24, 2005, acting as a "gofer" for Naomi Hulme, BSI's president. He observed Billmeier, who was carrying bed rails and "several different things," fall near one of the exhibit hall's dock doors. Brown noticed a spot of water near where Billmeier fell that measured about three inches in diameter and appeared to be smeared or disturbed. According to Brown, Billmeier fell in the same spot where a small SUV had been parked for approximately twenty minutes. In his affidavit, Brown stated that Billmeier "slipped and fell to her knee in some water . . . that had been left by air-conditioning condensation from the SUV." But Brown never saw the SUV leak any condensation or water; when the vehicle pulled away, the water was just

3

there. Brown opined at his deposition that the substance could have originated from "any number of things."

Lance Sanders worked security detail at the bridal show. He observed Billmeier having difficulty carrying a couple of "awkwardly large objects" just before she lost control of the objects and fell down to the floor. Sanders recounted that the objects that Billmeier was carrying measured approximately ten feet long. He did not observe any substance on the exhibit hall floor that could have caused or contributed to Billmeier's fall.

Billmeier sued BSI in July 2007. She alleged that she "was seriously injured as a result of a dangerous condition in that there was moisture on the floor where the event was being held" and that BSI "negligently permitted the floor to become wet and slippery, negligently or willfully allowed such condition to continue[,] and negligently or willfully failed to warn Plaintiff of the condition of the floor." Billmeier further alleged that the "condition existed despite the fact that [BSI] or [BSI's] agents knew or should have known of the existence of the aforementioned condition and that there was likelihood of a person being injured as occurred to Plaintiff."[2]

---

[2] Billmeier additionally alleged that BSI was negligent for "[f]ailing to properly inspect and maintain the flooring area in question to discover the dangerous condition," "[f]ailing to maintain the floor in a reasonably safe condition," and "[f]ailing to give adequate and understandable warnings to

4

BSI filed a motion for summary judgment arguing (1) that Billmeier's negligence claims are barred as a matter of law because "this is a pure premises liability case" and (2) that there is no evidence that BSI had actual or constructive knowledge of the substance on the surface of the exhibit hall.[3] Billmeier thereafter filed a first amended original petition that included the following additional allegations of negligence attributed to BSI: "[f]ailing to control the flow of vehicular and pedestrian traffic in the show room area so that leaks and drips from condensation would not create a hazardous condition"; "[f]ailing to use ropes, cones, or other devices to control and restrict the flow of pedestrian and vehicular traffic"; "[f]ailing to prohibit vehicles from the showroom floor area"; "failing to direct, manage[] and conduct the take down period in a reasonably safe manner"; "failing to direct, manage and conduct the bridal show in a reasonably safe manner"; "failing to plan and organize the take down of the bridal show in a reasonabl[y] safe manner"; "failing to give adequate direction and instruction to the persons controlling the traffic in the show room area"; "failing to correct the dangerous condition as soon as it was discovered"; and "failing to warn of the dangerous condition as

Plaintiff of the unsafe condition of the flooring area."

[3] We construe BSI's motion as moving for summary judgment on both traditional and no-evidence grounds. *See Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004) (permitting hybrid motions for summary judgment).

5

soon as it was discovered." The trial court granted BSI's motion for summary judgment. This appeal followed.

### III.  SUMMARY JUDGMENT STANDARDS

When the movant seeks summary judgment on traditional grounds, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

Under the no-evidence standard, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The trial court must grant the motion unless the nonmovant produces summary

6

judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

## IV. NEGLIGENT ACTIVITY CLAIMS

In her first issue, Billmeier argues that the trial court erred by granting BSI's motion for summary judgment on her negligent activity claims. She contends that she is not limited to asserting a premises defect claim as a matter of law because her summary judgment evidence demonstrates that she was injured contemporaneously with ongoing negligent activity.

7

An owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985). The owner or occupier may be liable for negligence in two situations: (1) those arising from a premises defect and (2) those arising from an activity or instrumentality. *Id.*; *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 34 (Tex. App.—Tyler 2003, pet. denied). When the alleged injury is the result of the premises's condition, the injured party can only recover under a premises defect theory. *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992); *see also State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (stating that a premises defect claim is based on the existence of an unsafe condition on property); *Trevino v. NVG N. Village Green I Ass'n, Inc.*, No. 14-07-00240-CV, 2008 WL 4367298, at *2 n.2 (Tex. App.—Houston [14th Dist.] Sept. 25, 2008, no pet.) (mem. op.). To recover under a negligent activity theory, the injured party must have been injured by, or as a contemporaneous result of, the activity itself, not by a condition the activity created. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Carbonara v. Tex. Stadium Corp.*, 244 S.W.3d 651, 657 (Tex. App.—Dallas 2008, no pet.).

Here, Billmeier allegedly slipped and fell when she contacted a clear, water-like substance on the surface of the concrete floor in the exhibit hall.

Brown theorized in his affidavit attached to Billmeier's summary judgment response that the substance was air-conditioning condensation left from an SUV that had been parked for twenty minutes in the same spot where Billmeier slipped and fell. Billmeier seemed to speculate similarly in her deposition. She recalled there being a blue pickup truck that was located in the doorway and waiting in a line with other vehicles, and she assumed that the truck had its engine and air conditioner running because it was 108 degrees that day. But whether the substance that Billmeier slipped on originated from a vehicle or from some other source, the substance on the floor was a condition of the premises. *See, e.g., Warner*, 845 S.W.2d at 259 (identifying a puddle of water, chicken blood, and other fluids that had accumulated on the floor as a condition of the premises); *June v. Dan Kirby Assocs.*, No. 14-94-00561-CV, 1995 WL 506012, at *1–2 (Tex. App.—Houston [14th Dist.] Aug. 24, 1995, writ denied) (not designated for publication) (identifying a wet floor caused by mopping as a condition of the premises). Billmeier alleged in her petition that she sustained her injuries "*as a result of* a dangerous condition in that there was moisture on the floor." [Emphasis added.] Because Billmeier's alleged injuries resulted from a condition of the premises, her only potential cause of action is limited to a premises liability theory. *See Warner*, 845 S.W.2d at 259;

*see also Shumake*, 199 S.W.3d at 284; *Trevino*, 2008 WL 4367298, at *2 n.2.

Billmeier contends that she was injured contemporaneously with ongoing negligent activity—permitting pedestrian and vehicular traffic in the same area where she fell—because "she was injured just a few seconds after the Ford SUV pulled away from where it had idled for 20 minutes, leaving a small puddle of condensation." Her argument is unpersuasive for a few reasons. Billmeier attempts to forge her premises defect claim into a negligent activity claim by alleging multiple negligent activities attributable to BSI, e.g., allowing vehicles to be driven into the exhibit hall. As BSI points out, however, adroit phrasing of the pleadings to encompass design defects, per se negligence, or any other theory of negligence does not affect application of premises liability law.[4] *McDaniel v. Cont'l Apartments Joint Venture*, 887 S.W.2d 167, 171 (Tex. App.—Dallas 1994, writ denied). Although Billmeier may have been injured by a *condition* created by allowing vehicles into the exhibit hall, she was not injured by the *activity* of allowing vehicles into the exhibit hall. *See Keetch*, 845 S.W.2d at 264. Billmeier's pleadings and argument blur the distinction

---

[4] "That which looks like a duck, walks like a duck, and quacks like a duck will be treated as a duck even though some would insist upon calling it a chicken." *Tidelands Marine Serv. v. Patterson*, 719 F.2d 126, 128 n.3 (5th Cir. 1983).

between liability stemming from negligent activity and liability based on a premises defect. This is inconsistent with supreme court precedent addressing negligent activity theory and premises defect case law. *See Shumake*, 199 S.W.3d at 284; *Keetch*, 845 S.W.2d at 264.

Moreover, even considering Billmeier's argument as stated, assuming that the substance on the floor originated from the SUV, the evidence does not demonstrate that Billmeier's slip and fall was a contemporaneous result of BSI's alleged negligent activity of allowing the SUV to drive into the exhibit hall. Billmeier slipped and fell after the SUV had left the exhibit hall.

Because Billmeier's injuries resulted from an alleged condition of the premises, not by, or as a contemporaneous result of, an alleged negligent activity, we hold that the trial court did not err by granting summary judgment in favor of BSI on the ground that Billmeier is limited to asserting a premises defect case as a matter of law. We overrule Billmeier's first issue.

## V. PREMISES DEFECT CLAIM

In her second issue, Billmeier argues that the trial court erred by granting BSI's motion for summary judgment because "[t]here are disputed issues of material fact such that summary judgment should not have been granted."[5]

---

[5] Considering the extent of Billmeier's argument in her second issue, it is unclear whether she is arguing that genuine issues of material fact exist as

11

Billmeier does not dispute that the elements of her premises liability claim are as follows: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiff's injuries. *Keetch*, 845 S.W.2d at 264; *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983); *Reid v. Compass Group USA, Inc.*, 172 S.W.3d 203, 209 (Tex. App.—El Paso 2005, no pet.). A slip-and-fall plaintiff satisfies the notice element by establishing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *Wal-Mart Stores, Inc. v. Diaz*, 109 S.W.3d 584, 587 (Tex. App.—Fort Worth 2003, no pet.).

---

to her premises liability claim, whether genuine issues of material fact exist as to her negligent activity claim, or whether genuine issues of material fact exist as to both claims. To the extent Billmeier intends to argue that genuine issues of material fact exist as to her negligent activity claims, those arguments are without merit because we have already determined above that the trial court did not err by granting BSI summary judgment on her negligent activity claims. Accordingly, we construe Billmeier's second issue as contending that genuine issues of material fact exist on her premises liability claim.

12

There is scant evidence relevant to the issue of notice. There is no evidence that Brown noticed the substance on the floor before Billmeier slipped and fell. In his affidavit, Brown recounted that "[t]he water was unnoticeable until after [Billmeier] slipped." Sanders, who claimed to have near perfect vision, did not recall observing any substance on the exhibit hall floor that could have caused or contributed to Billmeier's fall. Hulme's deposition testimony includes no evidence relevant to the notice issue.[6] Billmeier testified in her deposition that she did not see the substance until after she fell, that she does not know how the substance came to be on the floor, and that she does not know how long the substance had been there before she fell. Billmeier also stated that it would have been "difficult" to see the substance had she been looking at the ground while walking towards the exhibit hall's exit instead of looking at the people and vehicles around her.

Having examined the entire record in the light most favorable to Billmeier, indulging every reasonable inference and resolving any doubts against BSI's motion, we hold that Billmeier failed to produce summary judgment evidence raising a genuine issue of material fact that BSI had actual or constructive

---

[6] Hulme was not even sure that Billmeier fell as a result of slipping in the substance on the floor.

13

knowledge of the substance on the exhibit hall floor. *See* Tex. R. Civ. P. 166a(i). We overrule Billmeier's second issue.

## VI. CONCLUSION

Having overruled Billmeier's two issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: CAYCE, C.J.; MCCOY and MEIER, JJ.

DELIVERED: April 30, 2009